421 A.2d 803

**Michael J. MALLOY and Helen Malloy, Appellants,**

v.

**J. Rush SHANAHAN, M.D.**

Superior Court of Pennsylvania.

Argued Dec. 3, 1979.

Filed Aug. 22, 1980.

J. Keath Fetter, West Chester, for appellants.

John S. J. Brooks, Media, for appellee.

Before PRICE, WATKINS and HOFFMAN, JJ.

WATKINS, Judge:

This is an appeal from the order of the Court of Common Pleas, Civil Division, of Chester County, which denied appellant's motion for a new trial.

This is a medical malpractice suit brought in trespass and assumpsit but tried only in trespass. The jury returned a verdict in favor of the doctor–appellee and against the appellants.

The record indicates that the appellant, Mrs. Helen Malloy, was suffering from what was diagnosed as rheumatoid arthritis and sought appellee's help as the result of a referral from an arthritis clinic.

After examination and diagnosis, relief from the pain and swelling was sought through use of aspirin, Butazolidin and later Indocin which treatment was discontinued because of the effect of the drugs on the appellant (upset stomach, etc.).

The appellee then prescribed Chloroquine in August of 1958 which gave the appellant relief. The prescription was for 100 tablets, 250 milligrams per tablet to be taken one tablet per day. The same prescription was given to the appellant in October, 1965 and January, 1967.

The prescription as given made no allowance for refilling and was for a drug which was not legally refillable without prescription. The appellant, however, got two pharmacies to continually refill the prescription and she took one tablet a day from 1959 to 1971 without the knowledge or consent of the appellee.

As a result of the prolonged use of the drug, the appellant developed retinopathy and became partially blind.

The appellee testified that he told the appellant of the possible side effects and toxicities associated with the use of the drug. The appellant denied that this was true.

The sole question on appeal is whether a doctor who renders treatment to a patient consisting of the therapeutic

administration of a drug with known potentially dangerous side effects is obligated to secure the patient's informed consent to the treatment by disclosing to the patient all the facts, risks and alternatives that a reasonable person, in the situation which the doctor knew or should have known was that of the patient, would deem significant in making a decision to undergo the recommended treatment and should the court below so instruct the jury in the instant case?

 Such informed consent is required of patient, absent an emergency, prior to a surgical operation. *Smith v. Yohe*, 412 Pa. 94, 194 A.2d 167 (1963); *Gray v. Grunnagle*, 423 Pa. 144, 223 A.2d 663 (1966). However, this has not been extended to therapeutic treatment, which is usually an ongoing treatment upon examination by the treating physician, where any change of condition can be diagnosed and controlled.

As the court below said;

The doctrine of informed consent has been applied only to suits involving surgical operations or procedure, wherein 'an operation without the patient's consent is a technical assault': *Gray v. Grunnagle*, 423 Pa. 144, 155 [223 A.2d 663] (1966). Questions of consent to medical treatment constitute 'an area basically covered by contractural concepts': *Cooper v. Roberts*, 220 Pa.Super. 260 [286 A.2d 647] (1971), 220 Pa.Super. at 268 [286 A.2d 647]. The said doctrine has never been extended to the type of malpractice action brought herein and this Court will no(t) do so. As *Cooper v. Roberts*, supra, pointed out, 220 Pa.Super. at 268 [286 A.2d 647]:

"However, there is a basic distinction between the normal malpractice suit, where the gist is whether the physician failed to conform to accepted medical practice, and 'informed consent' cases, where the salient question is whether the patient made an effective assent to treatment, and where determining whether there was any dereliction of professional duty on the part of the physician is only one facet in the resolution of the ultimate issue."

■ In any event, in this case the appellant visited the appellee only once between 1959 and 1971 and did not give him the opportunity to use his expertise in discovering any side effects and controlling them.

The proximate cause of her malais was her independent prolonged use of the drug and the pharmacies which supplied them.

Order affirmed.

PRICE, J., concurs in the result.

HOFFMAN, J., files a dissenting opinion.

HOFFMAN, Judge, dissenting:

I dissent. I would hold that the doctrine of informed consent enunciated in *Cooper v. Roberts*, 220 Pa.Super. 260, 286 A.2d 647 (1971), applies to cases involving prescription of drugs as well as to those involving surgical operations. Accordingly, I would reverse the order of the court below and remand for a new trial.

On June 30, 1972, appellants, Michael and Helen Malloy, filed a complaint against appellee, Dr. J. Rush Shanahan. The complaint alleged that appellee negligently failed to warn Mrs. Malloy of the potential harmful side effects of the drug chloroquine which he prescribed for her. The complaint further alleged that Mrs. Malloy is now partially blind as a result of prolonged use of the drug.

The case was tried before a jury which returned a general verdict against appellants. Appellants filed a motion for new trial challenging the trial court's failure to charge the jury on the issue of informed consent. The lower court denied the motion, stating that "[t]he doctrine of informed consent has been applied only to suits involving surgical operations or procedure, wherein 'an operation without the patient's consent is a technical assault.'" Slip op. at 1 (quoting *Gray v. Grunnagle*, 423 Pa. 144, 155, 223 A.2d 663, 668–669 (1966)). Appellants then took this appeal.

The doctrine of informed consent originally provided that a physician's failure adequately to inform the patient of the risks inherent in a proposed surgical procedure vitiated the patient's consent to the treatment. Thus, in performing the surgery, the physician was deemed to have engaged in a nonconsensual touching or battery. *Bang v. Charles T. Miller Hospital,* 251 Minn. 427, 88 N.W.2d 186 (1958); *Gray v. Grunnagle,* 423 Pa. 144, 223 A.2d 663 (1966). The doctrine is based upon the principle that an individual has the right to determine what shall be done with his body. *See Schloendorff v. Society of New York Hospital,* 211 N.Y. 125, 105 N.E. 92 (1914).

Judge WATKINS concludes that the physician in the instant case was not required to obtain appellant's informed consent because, rather than performing a surgical operation upon appellant, he prescribed a course of drug treatment. Apparently Judge WATKINS relies upon the theory that prescribing drugs does not involve the element of "touching" required to give rise to liability for battery. In concluding that the doctrine of informed consent "has not been extended to therapeutic treatment," however, he overlooks the overwhelming trend among courts in other jurisdictions toward recognizing the doctrine as being grounded on *negligence* rather than battery. *See, e. g., Canterbury v. Spence,* 464 F.2d 772 (D.C.Cir. 1972) *cert. denied* 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972); *Cobbs v. Grant,* 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1 (1972); *Nishi v. Hartwell,* 52 Haw. 188, 473 P.2d 116 (1970); *Natanson v. Kline,* 186 Kan. 393, 350 P.2d 1093 (1960); *Downer v. Veilleux,* 322 A.2d 82 (Me.1974); *Sard v. Hardy,* 281 Md. 432, 379 A.2d 1014 (1977); *Calabrese v. Trenton State College,* 162 N.J.Super. 145, 392 A.2d 600 (1978); *Shack v. Holland,* 89 Misc.2d 78, 389 N.Y.S.2d 988 (1976); *Wilkinson v. Vesey,* 110 R.I. 606, 295 A.2d 676 (1972); *Miller v. Kennedy,* 11 Wash.App. 272, 522 P.2d 852 (1974); *Trogun v. Fruchtman,* 58 Wis.2d 569, 207 N.W.2d 297 (1973). *See also Truman v. Thomas,* 27 Cal.3d 285, 165 Cal.Rptr. 308, 611 P.2d 902 (1980).

Courts following this trend have recognized that the failure to obtain a patient's informed consent does not correspond to the traditional concept of battery because the doctor's omission rarely results from a wilful intent to injure the patient. *Wilkinson v. Vesey, supra; Miller v. Kennedy, supra; Trogun v. Fruchtman, supra.* The physician customarily lacks the malicious state of mind associated with intentional torts. *See* Comment, *Informed Consent in Medical Malpractice*, 55 Cal.L.Rev. 1396, 1399 n.18 (1967). Similarly, the physician's culpable conduct, the failure to inform, does not itself involve a "touching" of the patient.

In *Canterbury v. Spence, supra,* the United States Court of Appeals for the District of Columbia recognized the patient's virtually "abject" reliance upon his physician for information affecting his well–being. 464 F.2d at 782. *See also Cobbs v. Grant, supra.* Based upon the fiducial quality of this relationship, the Court concluded that the duty to disclose risks attendant to treatment is but an element of the physician's general duty to exercise reasonable care for the benefit of his patient. Accordingly, the Court characterized the failure to disclose as a breach of a duty care rather than commission of an intentional tort. *See also Miller v. Kennedy, supra,* 11 Wash.App. at 282–283, 522 P.2d at 860.

Some courts have cited more practical considerations in support of a change to negligence theory. The California Supreme Court has noted that "a doctor could be held liable for punitive damages under a battery count and if held liable for the intentional tort of a battery, he might not be covered by his malpractice insurance." *Cobbs v. Grant, supra,* 8 Cal.3d at 240, 104 Cal.Rptr. at 512, 502 P.2d at 8. *See also Trogun v. Fruchtman, supra.* It would, however, be improper to impose these sanctions upon the physician absent a finding of wilful misconduct.

More fundamentally, the doctrine of informed consent is based upon the concept that "[e]very human being of adult years and sound mind has a right to determine what shall be done with his body." *Schloendorff v. Society of New York Hospital,* 211 N.Y. 125, 126, 105 N.E. 92, 93 (1914). That

principle has, in turn, resulted in recognition of a patient's "right to know," because "[t]rue consent to what happens to one's self is the informed exercise of a choice, and that entails an opportunity to evaluate knowledgeably the options available and the risks attendant upon each." *Canterbury v. Spence, supra* at 780. In *Cooper v. Roberts, supra,* 220 Pa.Super. at 267, 286 A.2d at 650, this Court noted that the patient has a "right to know all material facts pertaining to the proposed medical treatment" because he "must bear the expense, pain and suffering of any injury from medical treatment." Where a physician prescribes a drug without properly informing the patient of the risks involved, he invades the patient's bodily integrity and violates the patient's concomitant right to know just as if he had performed a surgical operation without first obtaining the patient's informed consent.

The theory that failure to obtain informed consent to treatment constitutes a form of negligence eliminates the artificial requirement that the physician engage in a "touching" and thus a battery in order to be held liable. Under the negligence standard, a patient may recover for injury which results when a physician prescribes a drug without first obtaining the patient's informed consent. Under the battery theory, however, the patient's ability to recover would depend upon the manner in which the drug was administered. Thus, a patient who received a drug by *injection* without being informed of the drug's potential side effects could recover, while one who took the same drug *orally* without knowingly consenting could not recover. By following the trend toward negligence theory, we would eliminate such absurd distinctions from our law of informed consent.

In accordance with the foregoing, I would hold that where a physician fails to inform his patient of the risks attendant to a proposed course of treatment, the patient may properly proceed against the physician on a negligence theory should an undisclosed complication in fact arise.[1] Thus, because

1. By adopting the negligence theory of informed consent, we would not preclude suit on the battery theory in appropriate cases. For

appellants alleged that Mrs. Malloy suffered partial blindness as a result of appellee's "careless" failure to inform her of the potential side effects of taking the drug he had prescribed, the complaint properly sounded in negligence. Having determined that this is an appropriate case for the application of negligence theory, it is necessary to consider whether, as appellants contend, their proposed points for charge properly set forth the scope of a physician's duty to inform his patient of risks inherent in treatment.

In *Cooper v. Roberts, supra,* this Court concluded that the determinative issue in informed consent cases is "whether the physician disclosed all those facts, risks and alternatives that a reasonable man in the situation which the physician knew or should have known to be the plaintiff's would deem significant in making a decision to undergo the recommended treatment." 220 Pa.Super. at 267, 286 A.2d at 650. We expressly rejected a standard which would measure the physician's conduct against "that amount of disclosure which would be made by a reasonable practitioner in the medical community." *Id.,* 220 Pa.Super. at 264, 286 A.2d at 649. In refusing to adopt a community standard of disclosure, we took cognizance of the fiduciary nature of the physician/patient relationship, "the patient's right to be the arbiter of the medical treatment he will undergo," and the difficulty plaintiffs would encounter in attempting to pierce the "community of silence" existing among physicians. *Id.,* 220 Pa. Super. at 266–67, 286 A.2d at 650. Those considerations which prompted our holding in *Cooper* remain relevant when a negligent failure to disclose risks is alleged. Thus, several of the leading cases adopting the negligence theory of informed consent have employed a similar standard in determining whether the physician breached his duty of care. Thus, the *Caterbury* Court stated:

> example, "[w]here a doctor obtains consent of the patient to perform one type of treatment and subsequently performs a substantially different treatment for which consent was not obtained, there is a clear case of battery." *Cobbs v. Grant,* 8 Cal.3d at 239, 104 Cal.Rptr. at 511, 502 P.2d at 7.

In our view, the patient's right of self–decision shapes the boundaries of the duty to reveal. That right can be effectively exercised only if the patient possesses enough information to enable an intelligent choice. The scope of the physician's communications to the patient, then, must be measured by the patient's need, and that need is the information material to the decision.

*Canterbury v. Spence, supra* at 786 (footnote omitted). Similarly, in *Cobbs v. Grant, supra*, the court stated that "the test for determining whether a potential peril must be divulged is its materiality to the patient's decision." 8 Cal.3d at 245, 104 Cal.Rptr. at 515, 502 P.2d at 11. *See also Miller v. Kennedy, supra*, 11 Wash.App. at 282–283, 522 P.2d at 860 ("The scope of the duty to disclose information . . . is measured by the patient's need to know."); *Sard v. Hardy, supra*, 281 Md. at 444, 379 A.2d at 1022 ("the scope of the physician's duty to inform is to be measured by the materiality of the information to the decision of the patient"). I would therefore hold that a physician breaches his duty of care when he fails to disclose those risks which a reasonable person in the patient's situation would deem material to the decision whether to undergo treatment.

This standard does not mandate disclosure of *every* risk involved in treatment in *every* situation. Thus, where immediate emergency treatment is required, the physician may proceed despite the patient's inability to consent. *See Canterbury v. Spence, supra*, at 788, *Cobbs v. Grant, supra*, 8 Cal.3d at 243, 104 Cal.Rptr. at 514, 502 P.2d at 10. Similarly, the physician may withhold information in those rare situations in which the patient's condition is so delicate that disclosure of risks would be severely detrimental to the patient or rational decision–making would be unfeasible. *Canterbury v. Spence, supra* at 789; *Miller v. Kennedy, supra*, 11 Wash.App. at 286–290, 522 P.2d at 863–64. Additionally, as in any negligence case, the physician's duty to disclose extends only to those risks of which he knew or should have known. *Sard v. Hardy, supra*, 281 Md. at 444–447, 379 A.2d at 1022–23. Finally, the physician need

not engage in "a lengthy polysyllabic discourse on all possible complications" or a discussion of "the relatively minor risks inherent in common procedures, where it is common knowledge that such risks in the procedure are of very low incidence."[2] *Cobbs v. Grant, supra,* 8 Cal.3d at 244, 104 Cal.Rptr. at 515, 502 P.2d at 11. *See also Wilkinson v. Vesey, supra,* 110 R.I. at 626–628, 295 A.2d at 689.

One of appellants' proposed points for charge provided: "A physician has a duty of disclosure to his patient. A physician is obligated to disclose to his patient all of those risks which a reasonable man in the situation which the doctor knew or should have known to be patient's situation, would consider important to her decision whether to undergo treatment. *Cooper v. Roberts,* 220 Pa.Super. 260, 286 A.2d 647 (1971)."[3] This statement properly embodies the negligence theory of informed consent and the materiality standard of care. Accordingly, I would hold that the lower court erred in failing to charge the jury on the substance of appellants' point for charge.[4]

**2.** Thus, for example, where a physician has no reason to know of a patient's peculiar susceptibility, he need not inform the patient of the remote possibility of death or serious bodily harm from treatment with antibiotics. *See Cobbs v. Grant, supra,* 8 Cal.3d at 244, 104 Cal.Rptr. at 515, 502 P.2d at 11.

**3.** Appellants also contest denial of the following proposed point for charge:

Thus, a physician who prescribes for his patient a drug or medication with known dangerous potential side effects or toxicities is obligated to warn or advise his patient of those known dangerous potential side effects and toxicities which a reasonable person would consider important to her decision whether to undergo the treatment prescribed. *Cooper v. Roberts,* supra; *Incollingo v. Ewing,* [444 Pa. 263, 282 A.2d 206 (1971)].

The discussion in text applies equally to this point for charge.

In the *Incollingo* case cited by appellants, a physician was held liable for negligent prescription of the drug chloromycetin. Plaintiffs in that case, however, did not argue that the physician failed to disclose known risks of taking the drug, but rather that the physician breached his standard of care simply by prescribing the dangerous drug.

**4.** Although Judge WATKINS concludes that intervening negligence relieved appellee of liability, I would remand for proper determination by the jury of that issue after a new trial.