497 A.2d 646

**Irene and Paul BOYER, Appellants,**

**v.**

**Stephen H. SMITH, M.D. and Quakertown Community Hospital, Appellees.**

Superior Court of Pennsylvania.

Argued June 20, 1985.

Filed Aug. 23, 1985.

Peter J. Boyer, Philadelphia, for appellants.

Joseph C. Bernstein, Allentown, for appellees.

Before MONTEMURO, POPOVICH and WATKINS, JJ.

MONTEMURO, Judge:

This appeal presents the issue of whether to expand the current applicability of the doctrine of informed consent beyond cases involving medical treatment by operative procedures so as to encompass cases involving solely the administration of therapeutic drugs.

This action was commenced on January 31, 1979, before the Arbitration Panels for Health Care. On November 28, 1980, the matter was transferred to the Court of Common Pleas of Bucks County. On November 8, 9 and 10, 1982, a trial was held before the Honorable Edmund V. Ludwig and a jury. The jury returned a verdict in favor of appellee,

Stephen H. Smith, M.D.[1] On November 17, 1982, appellants filed a motion for new trial and, following argument, the court below denied the motion on July 23, 1984. Upon appellants' praecipe, judgment was entered for appellee on August 31, 1984, and this timely appeal followed.

Appellants' sole post-trial challenge is to the lower court's refusal to charge the jury regarding the doctrine of informed consent. At trial, appellants requested that the jury be instructed in pertinent part as follows:

> If you find that the plaintiff, Irene Boyer, was not informed of the risks and alternatives to a health care service which a reasonable person would expect to know in order to be able to make an intelligent choice as to whether to undergo the treatment, the defendant Dr. Smith is liable for all of the injuries sustained by the patient as a result of the treatment.

As set forth in the Pa.R.A.P. 1925(b) opinion of the court below, the facts underlying this action are the following:

> On September 26, 1978, Irene Boyer, age 55, who was accompanying her husband on his visit to Dr. Smith, an orthopedist, complained to the doctor of pain in her lower back and leg. Upon examining her, Dr. Smith diagnosed the condition as sciatica with possible nerve root compression. He prescribed a 10-day supply of 100 milligram capsules of butazolidin and bed rest and advised Mrs. Boyer that butazolidin could cause oral and gastrointestinal ulcers. He did not inform Mrs. Boyer about the possibility of other side effects. He was aware of its life-threatening potential and of the existence of less potent drugs. She was to notify him of the occurrence of any problems and was to return in seven to 10 days. At his direction, she obtained a complete blood count, which was within normal limits.

> After taking the medication for a week, Mrs. Boyer developed symptoms consistent with a severe drug reaction. She was admitted to Quakertown Community Hos-

---

**1.** Appellants' action against Quakertown Community Hospital was dismissed by stipulation of counsel at the commencement of trial.

pital and, as a result of pulmonary complications, was transferred to Allentown and Sacred Heart Hospital, where she remained until discharged some three weeks later.

Lower court opinion, 1–2.

The doctrine of informed consent was introduced into the law of this Commonwealth in 1966 by our supreme court's opinion in *Gray v. Grunnagle*, 423 Pa. 144, 223 A.2d 663 (1966). In *Gray*, an action was commenced seeking recovery for the unsuccessful performance of a surgical procedure. Plaintiff/appellant therein received a verdict in the amount of $80,000.00, the jury having found that the operation was performed without plaintiff/appellant's consent. Thereafter, the lower court *en banc* granted defendant's motion for judgment *non obstante veredicto*. On appeal, our supreme court reversed and reinstated the verdict of the jury. In *Salis v. United States*, 522 F.Supp. 989 (M.D.Pa.1981), the District Court for the Middle District of Pennsylvania aptly summarized the *Gray* opinion:

Writing for the majority, Justice ... O'Brien began with the proposition that consent to medical therapy is contractual in nature. According to this rationale, the physician and patient have an agreement concerning the scope and nature of the latter's care, and the doctor has no right to come into contact with the patient's body except within the terms of the compact. Thus, a surgeon who treats an individual without that person's consent commits a technical battery and is responsible for the consequences of the tort.... Furthermore, after reviewing scholarly comment and precedents from other jurisdictions, Justice O'Brien concluded that assent to treatment is not really conscious unless made with knowledge of the risks and possible benefits. On this basis, the majority ruled that consent is only valid if the individual grants it after being apprised of such important matters as the nature of the therapy, the seriousness of the situation, the disease and organs involved, and the potential results of the treatment.... After an examination of the record, Justice O'Brien declared that the issue of consent had been

properly placed before the jury and the verdict should be allowed to stand.

*Salis,* 522 F.Supp. at 997 (citations and footnote omitted). Significantly, as noted by the district court in *Salis,* "Pennsylvania has placed itself in a decided minority by choosing a 'battery' rather than [a] negligence theory in defining informed consent." *Id.* at 997–98 n. 10.

In *Cooper v. Roberts,* 220 Pa.Super. 260, 286 A.2d 647 (1971), this court stated:

The law in this Commonwealth is that where a patient is mentally and physically able to consult about his condition, in the absence of an emergency, his 'informed consent' (as now defined by *Gray*), is a prerequisite to a surgical operation by his physician. An operation without such informed consent is a technical assault, making the physician liable for any injuries resulting from the invasion, regardless of whether the treatment was negligently administered. [ ] *Smith v. Yohe,* 412 Pa. 94, 194 A.2d 167 (1963); *Moscicki v. Shor,* 107 Pa.Super. 192, 163 A. 341 (1932).

*Id.,* 220 Pa.Superior Ct. at 265, 286 A.2d at 649 (footnote omitted).[2]

In *Malloy v. Shanahan,* 280 Pa.Super. 440, 421 A.2d 803 (1980), this court was presented with a novel issue, which we characterized as follows:

The sole question on appeal is whether a doctor who renders treatment to a patient consisting of the therapeutic administration of a drug with known potentially dangerous side effects is obligated to secure the patient's

---

**2.** The law of this Commonwealth is that, in determining whether a patient's consent was indeed "informed", a fact-finder utilizes the following so-called "objective standard" and must consider "whether the physician disclosed all those facts, risks and alternatives that a reasonable man in the situation which the physician knew or should have known to be the plaintiff's would deem significant in making a decision to undergo the recommended treatment." *Cooper v. Roberts,* 220 Pa.Super. 260, 267, 286 A.2d 647, 650 (1971). *See also De Fulvio v. Holst,* 272 Pa.Super. 221, 414 A.2d 1087 (1979); *Jeffries v. McCague,* 242 Pa.Super. 76, 363 A.2d 1167 (1976); *cf.* Act of October 15, 1975, P.L. 390, § 103, 40 P.S. § 1301.103.

informed consent to the treatment by disclosing to the patient all the facts, risks and alternatives that a reasonable person, in the situation which the doctor knew or should have known was that of the patient, would deem significant in making a decision to undergo the recommended treatment and should the court below so instruct the jury in the instant case?

*Id.*, 280 Pa.Superior Ct. at 442–43, 421 A.2d at 804. Clearly, the issue presently before us is identical to that which was presented in *Malloy.* However, *Malloy* resulted in a plurality decision with Judge Watkins writing the opinion of the court, Judge Price concurring in the result, and Judge Hoffman vigorously dissenting. As such, *Malloy* provides us with ample guidance yet no clear precedence. *See Commonwealth v. Davenport*, 462 Pa. 543, 342 A.2d 67 (1975).

In *Malloy,* Judge Watkins observed that "informed consent is required of [a] patient, absent an emergency, prior to a surgical operation.... However, this has not been extended to therapeutic treatment, which is usually an ongoing treatment upon examination by the treating physician, where any change of condition can be diagnosed and controlled." *Id.*, 280 Pa.Super. at 443, 421 A.2d at 804 (citations omitted). Judge Watkins went on to quote the trial court's opinion noting that:

'The doctrine of informed consent has been applied only to suits involving surgical operations or procedure, wherein "an operation without the patient's consent is a technical assault": *Gray v. Grunnagle*, 423 Pa. 144, 155 [223 A.2d 663] (1966). Questions of consent to medical treatment constitute "an area basically covered by contractual concepts": *Cooper v. Roberts*, 220 Pa.Super. 260 [286 A.2d 647] (1971), at 268 [286 A.2d 647]. The said doctrine has never been extended to the type of malpractice action brought herein and this Court will no(t) do so.'

*Id.* (brackets in original).

In his dissent, Judge Hoffman urged the adoption of a negligence theory of informed consent, stating:

Courts following this trend have recognized that the failure to obtain a patient's informed consent does not correspond to the traditional concept of battery because the doctor's omission rarely results from a wilful intent to injure the patient.... The physician customarily lacks the malicious state of mind associated with intentional torts.... Similarly, the physician's culpable conduct, the failure to inform, does not itself involve a 'touching' of the patient.

*Id.*, 280 Pa.Superior Ct. at 446, 421 A.2d at 805–06 (Hoffman, J., dissenting) (citations omitted). Judge Hoffman further posited, "The theory that failure to obtain informed consent to treatment constitutes a form of negligence eliminates the artificial requirement that the physician engage in a 'touching' and thus a battery in order to be held liable." *Id.*, 280 Pa.Superior Ct. at 447, 421 A.2d at 806 (Hoffman, J., dissenting). Judge Hoffman concluded that, under a negligence theory of informed consent, recovery would be available in therapeutic drug cases. *See generally* Comment, *Informed Consent in Pennsylvania—The Need for a Negligence Standard,* 28 Vill.L.Rev. 149 (1982–83).

 We are of the opinion that the doctrine of informed consent should continue to be limited in its applicability to only those cases involving surgical or operative medical procedures. In *Gray, supra,* our supreme court expressly grounded its adoption of the informed consent doctrine upon the legal theory that the performance of a medical procedure without a patient's informed consent constitutes a technical assault or battery. To now expand the doctrine's current applicability to cases involving the administration of therapeutic drugs would be to radically depart from, and indeed obliterate, the foundation upon which the *Gray* decision stands. Not only are we unpersuaded that such expansion is necessary, we consider ourselves bound by our supreme court's pronouncements in *Gray.*

Furthermore, we are also of the particular opinion that, in light of the day-to-day realities of providing professional medical care, traditional medical malpractice actions, sound-

ing in negligence, are an adequate legal medium for compensating patients for the injurious consequences of therapeutic drug treatment.

Accordingly, we affirm the judgment of the court below.

Judgment affirmed.