**Cary v. Nagle**

*Regis M. McClelland,* for plaintiff.

*John W. Beatty,* for defendants Douglas B. Nagle, M.D. and Radiology Associates.

*Kimberly Oakes,* for defendants Keith Papendick, M.D. and Hamot Medical Center.

FISCHER, *J.,* May 11, 1993—Martin D. Cary was admitted as an outpatient to Hamot Medical Center in order to have an intravenous pyelogram performed by Dr. Nagle, who is associated with Radiology Associates of Erie.

The procedure involved the injection of Hypaque dye into an artery of Mr. Cary. Mr. Cary suffered a severe adverse reaction and died with the cause of death listed as anaphylactic shock secondary to the dye injection. This action brought by Mr. Cary's administratrix followed.

The defendants have filed preliminary objections in the nature of a demurrer to Counts II and IV of plaintiff's complaint in which she asserts that the procedure was performed without obtaining the informed consent of Mr. Cary. The sole issue before us is whether the injection of a dye for diagnostic purposes is such a procedure that requires the informed consent of the patient. We are constrained to hold that it is not.

Pennsylvania is in the minority in its determination to ground informed consent actions on the ground of battery rather than that of negligence. *Gray v. Grunnagle,* 423 Pa. 144, 223 A.2d 663 (1966). In *Gray,* our Supreme Court grounded the doctrine of informed consent "upon the legal theory that the performance of a medical procedure without a patient's informed consent constitutes a technical assault or battery." *Id.*

In interpreting *Gray* and its requirement of a battery, our Superior Court has held that "[t]he doctrine of informed consent should continue to be limited in its applicability to only those cases involving surgical or operative medical procedures." *Boyer v. Smith,* 345 Pa. Super. 66, 497 A.2d 646 (1985).

In *Boyer,* the patient suffered an adverse reaction to the oral administration of capsules of Butazolidin as a therapeutic drug. The physician had informed the patient that the drug could cause oral and gastrointestinal ulcers but did not inform her about the possibility of other side effects although he was aware of the drug's life-threatening potential and of the existence of less potent drugs. In declining to permit a cause of action based upon the informed consent doctrine, the court stated:

"To now expand the doctrine's current applicability to cases involving the administration of therapeutic drugs would be to radically depart from, and indeed obliterate, the foundation upon which the *Gray* decision stands. Not only are we unpersuaded that such expansion is necessary, we consider ourselves bound by our Supreme Court's pronouncements in *Gray.*

"Furthermore, we are also of the particular opinion that, in light of the day-to-day realities of providing professional medical care, traditional medical malpractice actions, sounding in negligence, are an adequate legal medium for compensating patients for the injurious consequences of therapeutic drug treatment." *Id.*

To the same effect is *Wu v. Spence,* 413 Pa. Super. 352, 605 A.2d 395 (1992). In *Wu,* the patient was admitted to the hospital and treated intravenously with the antibiotic Flagyl and suffered a peripheral neuropathy. Reiterating its obligation to follow *Gray* and citing *Boyer* and other cases, the court declined

to adopt a negligence standard for informed consent. In discussing whether the injection of the drug was a sufficient touching to find a battery to support a cause of action under informed consent, the court stated:

"[A]ppellant is clearly claiming damages caused by the action of the drug. Appellant is not claiming that she was harmed by the insertion of the needle. The method of administration of the drug is irrelevant to appellant's cause of action." *Wu, supra.*

Although the injection of Hypaque dye is done for diagnostic purposes rather than therapeutic ones, we are unable to draw a distinction between the two which would result in the former being considered a battery while the latter is not. Under our case law, in both instances the sole touching is the insertion of the needle by which a substance is injected.[*]

In *Wu,* our Superior Court suggested that:

"It may be time for the Supreme Court to reconsider its decision in *Gray.* The greater use of various drug treatments has led to a situation where the risk associated with adverse side effects may be considerable. Further, there is the possibility that in light of adverse side effects, a patient may wish to choose an alternative treatment. A patient's decision to undergo drug therapy should be no less informed that a decision to undergo surgery. *The law should require that a physician provide his patient with all available information and op-*

---

[*] Although we are of the opinion that the injection of a substance—whether that substance be a drug or a dye is irrelevant—is not solely a touching of the skin through which the subject is injected but also a touching of all the internal organs with which the injected substance comes in contact, we are not at liberty to ignore the determinations of our appellate courts.

*tions.* We find the dissenting opinion of Judge Hoffman in *Malloy v. Shanahan* persuasive in regard to adopting a negligence standard to eliminate any present confusion in the law. Under the present development of the law, whether or not to make such a change in the law is not within the province of this court." (emphasis added)

The point is equally applicable to diagnostic procedures of the type at issue. We agree entirely that the present distinction between battery and negligence theories is an artificial one which should be re-examined. Regrettably, we have no authority to do so.

### ORDER

May 11, 1992: The preliminary objection of the defendants to Counts II and IV of the plaintiff's complaint (informed consent counts) are granted for the reasons stated in the accompanying opinion. Counts II and IV are stricken from the complaint.