**Boyd v. Somerset Hospital**

*John E. Kusturiss, Jr.,* for plaintiff.
*Frank J. Hartye,* for defendant Somerset Hospital.
*Terrence F. McVerry,* for Atchaiah Gadiparthi.

CASCIO, *J.,* September 28, 1993—This case is before the court on preliminary objections filed by defendant, Somerset Hospital ("Hospital") and defendants, Atchaiah Gadiparthi, M.D. and Atchaiah Gadiparthi, M.D., P.C. ("Gadiparthi"), each challenging plaintiffs' complaint. The parties have waived oral argument and have submitted this matter before the court on the basis of their briefs.

The events giving rise to this medical malpractice case occurred on or around April 1, 1991, through April 21, 1991. In their complaint, plaintiffs allege that Mr. Boyd received negligent medical care from the defendants. Specifically, plaintiffs allege that the defendants failed to timely recognize, diagnose and properly treat Mr. Boyd's difficulty swallowing and Mr. Boyd's esophageal perforation which led to a mediastinal abscess. Plaintiffs further argue that because of the defendants' alleged negligence, Mr. Boyd suffered severe, painful and permanent physical and mental injuries.

Gadiparthi's preliminary objections contain a motion to strike or, in the alternative, a motion for more specific pleading of certain of the averments of negligence as violative of Pennsylvania Rule of Civil Procedure 1019(a).

The Hospital's preliminary objections contain: (1) a demurrer in the nature that plaintiffs' complaint fails to set forth a cause of action against the Hospital for agency or ostensible agency; (2) a demurrer or motion to strike certain of the complaint's averments based on corporate liability; (3) a demurrer alleging that the plaintiffs' claim of lack of informed consent against the Hospital fails to set forth a cause of action upon which relief can be granted; or, in the alternative (4) a motion for a more specific pleading in conformity with the Pennsylvania Rules of Civil Procedure.

## PRELIMINARY OBJECTIONS OF DEFENDANT GADIPARTHI

Gadiparthi contends that certain averments of negligence in plaintiffs' complaint violate Pa.R.C.P. 1019(a) by failing to set forth any material facts upon which a cause of action could be based. The alleged offending

averments against Gadiparthi contained in paragraph 42 of Count I of the complaint read as follows:

"42. Husband-plaintiff charges that Atchaiah Gadiparthi, M.D. and A. Gadiparthi, M.D., P.C., jointly and/or severally, were careless and negligent in their aforesaid care and treatment of him in that they: ...

"(t) failed to exercise proper skill, diligence and due care under the specific circumstances aforesaid;

"(u) failed to adhere to the standards of medical care in the community under the specific circumstances noted aforesaid;

"(v) failed to otherwise adhere to pertinent and applicable medical standards, and/or otherwise furnish medical care, treatment, evaluation and diagnostic procedures as one would reasonably and ordinarily expect from physicians in the specialty and profession of the defendant-doctor under the specific circumstances set forth aforesaid; and

"(w) failed to exercise that degree of skill, care and treatment and/or possess that degree of knowledge ordinarily possessed and exercised by other members of their profession and business under the specific circumstances noted aforesaid."

Relying on the well known case of *Connor v. Allegheny General Hospital,* 501 Pa. 306, 461 A.2d 600 (1983), Gadiparthi argues that these general allegations of negligence do not specifically inform him of the nature of the cause of action and set forth the type of conclusory language which is not permitted under the Pennsylvania Rules of Civil Procedure.

Having faced *Connor* objections in the past, we turn to a recent decision by this court to resolve this issue:

"Our primary task, therefore, is to determine whether the challenged averments are sufficiently specific to

apprise the defense of the material and ultimate facts relied upon so that proper defense may be prepared. This determination also will involve, however, an assessment of whether the challenged averments impermissibly present the risk of later unexpected amendment based upon new facts after the statute of limitations has run.

"The determination of whether or not facts have been averred with sufficient specificity, is almost always a difficult task, involving the sound exercise of discretion, based upon the circumstances and pleading in each particular case. While Pa.R.C.P. 1019(a) sets forth the basic requirement that material facts be stated in a concise and summary form, no more specific definitions are available. ...

"It is clear, however, that the challenged averments cannot be viewed in isolation. The complaint must be read as a whole. Each individual averment at issue must be read in connection with all other parts and averments of the complaint. *Landis v. Reed,* 49 Somerset Leg. J. 158 (1988); *Zambrowski v. Esper,* 72 Erie L.J. 194 (1989).

"We further note that discovery is not a substitute for proper pleading of the material or ultimate facts, although if the facts have been properly pled, the parties may be relegated to discovery for evidentiary details." (citations omitted) *Albright v. Gadiparthi et al.,* 50 Somerset Leg. J. 355, 361 (1991).

While we are mindful of plaintiffs' warning that we should not fall prey to the pleading paranoia that has gripped the defense bar in medical malpractice actions (Plaintiffs' brief, p. 7), we agree with defendant Gadiparthi that subparagraphs (t), (u), (v) and (w) of plaintiffs' complaint contain nothing more than "catch-all" allegations of negligence that do not apprise defendant

Gadiparthi of his conduct which the plaintiffs allege to have been improper and/or negligent.

It adds nothing to say that defendant Gadiparthi was negligent because he failed to exercise proper skill under the circumstances, failed to adhere to the standards of medical care in the community, failed to adhere to pertinent medical standards and failed to exercise that degree of skill possessed by other members of the medical profession. These allegations are not only conclusory, but they merely recite the standard of care required of a doctor. See *Gray v. Oech,* 49 D.&C.2d 358 (1970).

"We think that a physician charged with negligence and unskillfulness in the practice of his profession is entitled to be advised of the specific acts of commission or omission which constitutes the negligence and unskillfulness complained of, so that plaintiff's proof may be confined to such acts, and so that he may reasonably prepare for his defense." *Id.* at 361 (quoting *Bruaw v. Weaver,* 68 York Leg. Rec. 13, 15 (1954)).

Therefore, because we find that the challenged averments fail to aver the alleged acts of negligence with sufficient specificity, we will grant defendant Gadiparthi's motion to strike subparagraphs (t), (u), (v) and (w) of paragraph 42.

### PRELIMINARY OBJECTIONS OF DEFENDANT HOSPITAL

The first preliminary objection raised by defendant Hospital questions whether the plaintiffs' complaint sets forth claims of liability against the defendant Hospital based on direct or ostensible agency in regard to the defendant Hospital's relationship with defendant Gadiparthi. We disagree with defendant Hospital and find

that plaintiffs have adequately set forth claims of liability on theories of direct and ostensible agency.

In determining whether a demurrer should be sustained and a cause of action dismissed, the question presented is whether or not, on the facts averred in the entire complaint, the law says with certainty that no recovery is possible. *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 261 A.2d 867 (1970). "Preliminary objections in the nature of a demurrer will be sustained only when it appears with certainty that the law permits no recovery under the facts pleaded, and any doubts in the determination should be resolved by overruling the objections." *Dusack v. Conrail Corp.,* 44 Somerset Leg. J. 174 (1982) (quoting *Upper Moreland Twp. v. PennDOT,* 48 Pa. Commw. 27, 34, 409 A.2d 118, 121 (1979)).

In *Capan v. Divine Providence Hospital,* 287 Pa. Super. 364, 368-69, 430 A.2d 647, 649 (1980), the Pennsylvania Superior Court stated that two factors are relevant in determining whether ostensible agency exists: (1) Whether the patient looks to the institution, rather than the individual physician, for care; and (2) Whether the Hospital holds out the physician as its employee.

See also, *Boyd v. Albert Einstein Medical Center,* 377 Pa. Super. 609, 547 A.2d 1229 (1988); *Simmons v. St. Clair Memorial Hospital,* 332 Pa. Super. 444, 481 A.2d 870 (1984).

We agree with plaintiffs that paragraphs six and 11 through 16 of the complaint, when read as a whole and in conjunction with the rest of the complaint, clearly state that defendant Gadiparthi was an employee of defendant Hospital; that defendant Hospital had control over defendant Gadiparthi when defendant Gadiparthi used its facilities; that defendant Hospital granted certain

privileges to defendant Gadiparthi to use its facilities under the control of defendant Hospital; and that through defendant Gadiparthi's actions and representations, and/or the acts and representations of defendant Hospital, plaintiffs, acting in good faith, had reason to believe and in fact did believe that defendant Hospital possessed authority over defendant Gadiparthi. These are all facts that establish agency, not to be confused with the proofs needed to substantiate these facts at trial. Thus, we find that plaintiffs have pled the facts necessary to establish a cause of action based on direct or ostensible agency. Consequently, we overrule defendant Hospital's demurrer on this issue.

Defendant Hospital next objects to subparagraphs (a) through (d) of paragraph 44 and seeks a demurrer, claiming that the plaintiffs' allegations of corporate liability fail to state a claim for which relief can be granted. In the alternative to its demurrer, defendant Hospital seeks to have these subparagraphs stricken or, alternatively, pled more specifically.

The Commonwealth recognizes a theory of corporate liability with respect to hospitals. See *Thompson v. Nason Hospital,* 527 Pa. 330, 591 A.2d 703 (1991).

"This theory of liability creates a nondelegable duty which the hospital owes directly to a patient. Therefore, an injured party does not have to rely on and establish the negligence of a third party.

"The hospital's duties have been classified into four general areas: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment ...; (2) a duty to select and retain only competent physicians ...; (3) a duty to oversee all persons who practice medicine within its walls as to patient care ...; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the

patients." (citations omitted) *Id.* at 339-40, 591 A.2d at 707.

We decline to grant a demurrer as requested by defendant Hospital. However, we agree with defendant Hospital that a review of the complaint indicates that there are no factual allegations to indicate which policies and procedures were ineffective; which personnel were inappropriately selected, trained, and supervised; which patients received inadequate treatment; which equipment was inadequate or not available for patient treatment, and how the defendant Hospital failed in reviewing the performance of defendant Gadiparthi. Accordingly, we will strike paragraph 44(a) through (d) and allow leave for plaintiffs to file an amended complaint to comply with the foregoing. Additionally, we agree with defendant Hospital that, under *Thompson,* it is necessary to show that the hospital had actual or constructive knowledge of the defect or procedures which created the harm. *Id.* Thus, we direct plaintiffs to structure their amended complaint in conformity with the requisites of *Thompson.*

The next issue raised by defendant Hospital concerns the doctrine of informed consent. Defendant Hospital, in support of a demurrer to Count III of plaintiffs' complaint, urges that claim of failure to obtain informed consent is only applicable to physicians and surgeons and not health care institutions. On the other hand, plaintiffs contend that a claim of failure to obtain informed consent can be made against defendant Hospital pursuant to the doctrine of corporate liability in *Thompson.*

Traditionally, the appellate courts in this Commonwealth have interpreted the doctrine of informed consent as applicable only to "the surgeons who perform operations without first securing the informed consent

of the patient." *Foflygen v. R. Zemel, M.D. (PC),* 420 Pa. Super. 18, 33, 615 A.2d 1345, 1352-53 (1992) (citing *Friter v. Iolab Corp.,* 414 Pa. Super. 622, 626, 607 A.2d 1111, 1113 (1992)). See *e.g., Gray v. Grunnagle,* 423 Pa. 144, 233 A.2d 663 (1966); *Pratt v. Stein,* 298 Pa. Super. 92, 444 A.2d 674 (1982); *Boyer v. Smith,* 345 Pa. Super. 66, 497 A.2d 646 (1985). Thus, to an extent, defendant Hospital is correct in its contention that a claim of failure to obtain informed consent is historically brought against physicians and surgeons.

However, our research has uncovered one very recent case in which the Superior Court held that a hospital could be liable on a theory of failure to obtain informed consent. See *Friter, supra.* In *Friter,* Dr. Kenneth Michaile implanted an Iolab Model 91Z anterior chamber intraocular lens into the plaintiff's left eye following cataract surgery at Wills Eye Hospital. *Id.* at 623, 607 A.2d at 1111. Both Dr. Michaile, as a registered investigator for Iolab, and Wills Eye Hospital, as an approved institution for conducting experimental studies, were bound by the United States Food and Drug Administration (FDA) regulations to obtain an informed consent from any patient undergoing experimental treatment. *Id.* at 624, 607 A.2d at 1111. The plaintiff was never informed, prior to surgery, that he was to become a participant in the clinical investigation and have an unapproved medical device implanted in his eye. *Id.* at 624, 607 A.2d at 1111-1112.

As a result of damage caused to his eye, the plaintiff filed suit inter alia against the estate of Dr. Michaile and Wills Eye Hospital. *Id.* The jury returned a verdict in favor of the plaintiff in excess of $1.5 million in damages. *Id.* However, upon the filing of post-trial motions, the trial court granted Wills Eye Hospital's motion for a judgment n.o.v. *Id.*

The Superior Court reversed the trial court's grant of a judgment n.o.v. and held that the hospital could be liable for failure to obtain informed consent. *Id.* at 632, 607 A.2d at 1116.

"[U]nder the facts presented in this case, the hospital had assumed a duty, pursuant to FDA regulations, to ensure that any patient involved in a clinical study was made aware of the clinical nature of the procedure and the risks associated with such experimentation, and had signed a consent form acknowledging that fact.

"Therefore, one impediment as to why an informed consent action cannot lie against a hospital, that being the fact that only the physician has the duty to obtain the consent, does not exist in this case. To the contrary, federal regulations specifically mandated that the hospital assume the duty of obtaining informed consent.

"The second major obstacle offered as to why a hospital cannot be held liable in an informed consent action, is that informed consent is a battery action, and a hospital cannot commit a battery. ...

"In this instance, by applying to become and actually becoming an approved institution for conducting clinical studies, Wills Eye Hospital intended to cause patients to come in contact with a foreign substance, namely, the experimental intraocular lens. At the same time, the hospital agreed to abide by the federal regulations requiring it to ensure all patients were informed of the experimental nature of the study and signed consent forms attesting to that fact. By failing in its duty to [the plaintiff] to obtain his informed consent, the hospital rendered [the plaintiff's] contact with the foreign substance one which [the plaintiff] reasonably considered offensive. Thus, the hospital may now be held liable for committing a technical battery upon [the plaintiff]. ...

"In conclusion, because under the facts of this case we find that [the hospital] had assumed an independent duty to obtain [the plaintiff's] informed consent, and because the hospital intended [the plaintiff] to come in contact with a foreign substance by way of the investigational study, there is no reason why the hospital should not be held liable under an informed consent cause of action." *Id.* at 630-32, 607 A.2d at 1114-16.

We realize that the facts of the *Friter* case are atypical and may not even be analogous to the case at bar. However, in light of the Superior Court's holding in *Friter,* we cannot agree with defendant Hospital's assertion that a cause of action for failure to obtain informed consent lies only against physicians and surgeons. A cause of action for failure to obtain informed consent may lie against defendant Hospital if it assumed an independent duty to obtain husband-plaintiff's informed consent. We are unable to resolve this issue on the facts presently before us. Thus, we overrule defendant Hospital's demurrer to plaintiffs' claim of lack of informed consent against defendant Hospital.[1]

Defendant Hospital also objects to the fact that Count III of the complaint (informed consent) incorporates by reference all previous counts, which sound in negligence. We do agree with defendant Hospital that a claim of informed consent sounds as the intentional tort of battery, not as negligence. Failure to obtain informed consent is a separate cause of action and averments relating to informed consent cannot be intermingled with averments of negligence. See *Albright*

---

1. It should be noted that in a concluding footnote to *Friter,* the Superior Court refused to expand the doctrine of corporate liability under *Thompson* to encompass battery actions as "corporate liability has to date been premised on the proof of negligence." *Id.* at 632 n.1, 607 A.2d at 1116 n.1.

*v. Gadiparthi, supra.* Any claimed cause of action for failure to obtain informed consent should be set forth in a separate count, as required by Pa.R.C.P. 1020(a). *Id.* at 364. However, because plaintiffs have separated their cause of action in separate counts, we do not quite understand defendant Hospital's contention. It seems clear to us that instead of retyping the allegations, plaintiffs merely incorporated by reference all of the factual allegations that formed the basis of their claim.

Our last issue for consideration is defendant Hospital's demurrer or alternatively, a motion to strike, subparagraphs (e) through (j) of paragraph 44 in plaintiffs' complaint, which read as follows:

"44. While husband-plaintiff was under the aforesaid care, custody, control and supervision of defendant-hospital, said defendant directly and/or though its agents, servants, or employees, one of whom may have been or was defendant-Doctor named herein, was careless and negligent in that it:

"(e) failed to discharge those doctors and nurses whose medical service and skills fell below the general recognized standards of acceptable medical services and skills;

"(f) failed to treat husband-plaintiff in accordance with accepted medical and hospital practice under the specific circumstances noted aforesaid;

"(g) failed to exercise proper skill, diligence and due care under the specific circumstances noted aforesaid;

"(h) failed to adhere to the standard(s) of medical care in the community here applicable under the specific circumstances noted aforesaid;

"(i) failed to otherwise adhere to the pertinent, treatment, evaluation and diagnostic procedures as one would reasonably and ordinarily expect from medical institutions in the business of defendant-hospital under the specific circumstances noted aforesaid;

"(j) failed to exercise that degree of skill, care and treatment and/or possess that degree of knowledge and competence, ordinarily possessed by other hospitals under the specific circumstances noted aforesaid;"

We agree with defendant Hospital that these allegations are general assertions that do not fairly apprise defendant Hospital of the factual basis of the claims being made against it. For the reasons previously discussed with respect to the preliminary objections of defendant Gadiparthi, we will strike subparagraphs (e) through (j) of paragraph 44 in plaintiffs' complaint.

## ORDER

And now, September 28, 1993, consistent with the foregoing memorandum, defendant Gadiparthi's preliminary objection in the nature of a motion to strike subparagraphs (t), (u) (v), and (w) of paragraph 42 is sustained.

Defendant Hospital's preliminary objection in the nature of a demurrer on the issue of agency and ostensible agency is overruled.

Defendant Hospital's preliminary objection in the nature of a motion to strike subparagraphs (a) through (d) of paragraph 44 is sustained.

Defendant Hospital's preliminary objection in the nature of a demurrer to Count III of plaintiffs' complaint is overruled.

Defendant Hospital's preliminary objection in the nature of a motion to strike subparagraphs (e) through (j) of paragraph 44 is sustained.

Plaintiffs shall have 20 days after notice of this order to file an amended complaint consistent with this memorandum.