558 A.2d 895

**Dennis PODRAT and Mary Lou Podrat, his Wife, Appellant,**

v.

**CODMAN–SHURTLEFF, INC., and Presbyterian University Hospital, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1988.

Decided April 7, 1989.

Reargument Denied June 5, 1989.

---

James A. Villanova, Pittsburgh, for appellant.

Robert J. Marino, Pittsburgh, for appellee.

Before ROWLEY, DEL SOLE and MONTGOMERY, JJ.

DEL SOLE, Judge:

Today we are asked to consider whether a hospital may be liable to a patient under a theory of strict liability for injury which results when a medical instrument breaks during surgery. Since we conclude that the hospital was not in the business of selling or supplying the instrument in question, but was providing professional services to Appellant, we decline to find the hospital strictly liable.

Appellant, Dennis Podrat, underwent back surgery at Presbyterian University Hospital, (the Hospital) for a herniated lumbar disc. During the course of this surgery, the tip of a pituitary forcep being used by the attending physician broke off and lodged within the disc space. The broken tip of the forcep was later removed and the surgical instrument was discarded. Mr. Podrat and his wife filed suit against the Hospital and Codman–Shurtleff, Inc., the company they alleged manufactured the instrument. Appellants' claim

was based upon theories of negligence, strict liability and breach of warranty. At the close of Appellants' case the trial court granted a nonsuit as to both defendants. It found that Appellants failed to present any evidence that the instrument in question was manufactured by Codman–Shurtleff, Inc. It further rejected the sole claim presented to the trial court in Appellants' post-trial brief, that the hospital should be held strictly liable as a supplier of medical instruments.

The rule of strict liability found in § 402A of the Restatement of Torts (2d) provides that anyone who sells a defective product unreasonably dangerous to the user or consumer is liable for injury to such person if the seller is engaged in the business of selling such products, and the product reaches the user without a substantial change in its condition. This rule was adopted in Pennsylvania by our Supreme Court in the case of *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). The appellate courts of this Commonwealth have only once considered the application of strict liability to a hospital under circumstances similar to those found in the instant case. In *Grubb v. Albert Einstein Medical Center*, 255 Pa.Super. 381, 387 A.2d 480 (1978), the court was asked to review the applicability of strict liability to a hospital when the guard of a drill slipped causing the drill to penetrate further than anticipated during surgery to a vertebrae. In a per curiam Opinion it was acknowledged that strict liability does not turn on the technical existence of a sale and it would be a "reasonable extrapolation from the already expanding interpretation of 402A" to apply strict liability. *Id.*, 255 Pa.Superior Ct. at 401, 387 A.2d at 490. However, this Opinion did not command the vote of a majority of the judges. Six judges participated in the decision of the case. Two judges concurred in the result but would not hold the hospital liable on strict liability. Another two judges dissented and found error in charging the jury that the hospital could be liable under § 402A. A fifth judge also dissented as to the liability of the hospital and listed as a reason the erroneous instruction on strict liability when strict liability was not pleaded. Since the

opinion in support of holding the hospital strictly liable was not joined by a majority of the participating judges it is not precedential. *Askew by Askew v. Zeller,* 361 Pa.Super. 35, 521 A.2d 459 (1987). The *Grubb* decision, if anything, reveals that a majority of the court believed that the hospital should not be found strictly liable.

Fortunately other jurisdictions have been asked to examine this issue and their decisions provide us with guidance. In *Silverhart v. Mount Zion Hospital,* 20 Cal.App.3d 1022, 98 Cal.Rptr. 187 (1971), the court considered the applicability of strict liability to a situation where a surgical needle broke during an operation and became permanently lodged in the patient's body. As in *Grubb,* the court remarked upon the expansion of the doctrine to those aside from manufacturers who participate in the chain of distribution. In those cases the *Silverhart* court observed a common element; the defendants had each played a vital part in the overall production or marketing of the product. Although the plaintiff sought to establish that strict liability should apply to the hospital as a supplier of the surgical needle, the court rejected this characterization and instead found that the hospital was a provider of professional medical services, not a supplier of products.

In reaching it's decision the *Silverhart* court cited a New Jersey case where strict liability was not applied to a dentist whose drill broke while being used on a patient. The following quotation was cited:

> Of ... meaningful significance is a recognition that the *essence* of the transaction between the retail seller and the consumer relates to the *article sold.* The seller is *in the business* of supplying the product to the consumer. It is that, and that alone, for which he is paid. A dentist or physician offers, and is paid for his professional services and skill. That is the *essence* of the relationship between him and his patient.

*Id.* at 1026–7, 98 Cal.Rptr. at 190. Citing *Magrine v. Krasnica,* 94 N.J.Super. 228, 235, 227 A.2d 539 (1967) affirmed 100 N.J.Super. 223, 241 A.2d 637 and 53 N.J. 259,

250 A.2d 129. Persuaded by this rationale, the *Silverhart* court found that it applied with equal force to a hospital. It noted that a hospital is not ordinarily engaged in the business of selling any of the products or equipment it uses in providing services. It found that the needle was part of the surgical equipment furnished incidental to a medical service and since the hospital was not a seller engaged in the business of selling such needles it could not be held strictly liable. An exception to this principle was made. The court noted that where a hospital is engaged in activities not integrally related to its primary function of providing medical services, such as the situation where the hospital operates a gift shop which sells a defective product, strict liability may apply. *Id.* 20 Cal.App.3d at 1028, 98 Cal.Rptr. at 187.

The decision in *Silverhart* was later cited in *Hector v. Cedars–Sinai Medical Center*, 180 Cal.App.3d 493, 502, 225 Cal.Rptr. 595. Therein the court found that the hospital was not a seller and could not be held strictly liable for injuries caused by defects in a pacemaker. The court noted that the patient does not enter the hospital merely to purchase a pacemaker but to obtain a course of treatment which includes implantation of a pacemaker. Finding that the hospital actions of supplying the patient with a pacemaker is integrally related to the hospital's primary function of providing medical services, the court ruled that the hospital could not be subject to strict liability for a defective product. This decision was reached despite the fact the hospital charged the patient a percentage surcharge on the pacemaker. The court stated: "The determinative question is not how much the hospital charges for what it does, but what the hospital does." *Id.* at 506, 225 Cal.Rptr. at 600.

It was found that strict liability could be applied to a hospital where a patient's hospital gown ignited when he dropped a lighted match in *Thomas v. St. Joseph Hospital*, Tex.Civ.App., 618 S.W.2d 791 (1981). The court ruled that strict liability would not apply where there is no complaint that the product, per se, was defective apart from the professional services connected with its use, or when the

professional services could not have been rendered without using the product. The court found that the hospital gown was unrelated to the essential professional relationship and was not intimately and inseparably connected with the professional services rendered. It determined that if there was any evidence from which the jury reasonable could have concluded that the hospital gown was unreasonably dangerous, the jury should be afforded the opportunity to consider the hospital's liability under a theory of strict liability. *See also Nevauex v. Park Place Hospital, Inc.,* Tex.App., 656 S.W.2d 923 (1983) (holding strict liability will not attach to a hospital when a patient is injured by radiation therapy even if it is a product because it is "intimately and inseparably" connected with the professional services offered).

Turning to the instant case, we find that Appellants seek to recover under the same arguments presented to the courts of our sister states. Appellants urge us to rule that the hospital may be found strictly liable for the damage caused by the broken instrument since it was a supplier of a product. Appellants liken the instant case to those where a rental store leases a product to an individual, (*Francioni v. Gibsonia Truck Corp.,* 472 Pa. 362, 372 A.2d 736 (1977)) or where a beautician applies a defective solution of a customer's hair (Restatement (Second) of Torts § 402A comment 1). This we refuse to do. We are persuaded by the rationale developed in the caselaw of other jurisdictions. The hospital was not acting as a lessor who is in the business of providing its customers with products nor was it acting like a beautician who provides a permanent wave solution to a customer. Each of these individuals are ordinarily engaged in the business of selling a product which may be used in providing a service. The hospital, on the other hand, was providing a service to a patient. Incidental to this service, the treatment of the patient, was the use of an instrument. The surgical forceps were merely employed by the hospital in performing its actual function of providing medical services. The hospital's relationship with the patient did not relate essentially to the use of this

piece of equipment, but to the professional service it provided. *Silverhart v. Mount Zion Hospital, supra* 20 Cal. App.3d at 1027, 98 Cal.Rptr. at 187.

In support of their position Appellants rely upon a claim that the hospital charged the patient for the use of this instrument. First we note the the record does not support this claim. Although Mr. Podrat testified that he received a bill for "surgery and medical supplies," (N.T. 3/11/87), there is no evidence that a charge was made for the use of this particular piece of equipment. Further, even if a charge was made, the outcome of this case would not be affected. As stated in *Hector v. Cedars–Sinai Medical Center, supra* 180 Cal.App.3d at 506, 225 Cal.Rptr. at 600, a charge in and of itself does not place the hospital in the business of selling. We must concentrate not on how the hospital charges, or whether in fact it does charge, but rather what the hospital does. *Id. See also Francioni v. Gibsonia Truck Corporation,* 472 Pa. 362, 369–70 n. 3, 372 A.2d 736 (1977) (although strict liability is applied to conventional lease situation it is not applicable where the lessor is not marketing the product but merely financing its acquisition).

In sum, we conclude that the trial court did not err in finding that the hospital could not be liable under a theory of strict liability because the hospital was not in the business of selling this instrument, its use was only incidental to the hospital's primary function of providing medical services and the medical services could not have been rendered without the use of this product. We do not consider Appellant's second claim that the hospital should be found liable under the negligence theory of *res ipsa loquitor*. This issue was not argued before the trial court or included in Appellant's post-trial brief and the trial court did not address the merits of this claim. *Commonwealth v. Holzer,* 480 Pa. 93, 101, 389 A.2d 101 (1978); *Bell v. City of Philadelphia,* 341 Pa.Super. 534, 491 A.2d 1386 (1985).

Order affirmed.

ROWLEY, J., concurs.

ROWLEY, Judge, concurring:

I agree with the majority's decision to affirm the trial court's order refusing to remove the non-suit, and join in all of the majority's opinion except for the paragraph on page 897 of the slip opinion discussing the liability of a beautician under § 402A of the Restatement of Torts, Second, for non-negligently applying a defective solution to a customer's hair.

The majority, as does appellant, assumes without citation to any authority, that a beautician who applies a defective wave solution to a customer's hair in the beauty shop is a "seller" of the defective product and is liable under § 402A for selling a "defective product." My research has revealed no cases which support such a conclusion. Moreover, comment 1 to § 402A which discusses the application of defective wave treatments to a person's hair in a beauty salon does not provide authority for the conclusion that a beautician is a "seller" under § 402A and is irrelevant to the inquiry in the present case.

Section 402A by its own terms addresses the issue of the liability of one who "sells" a defective product to a "consumer." Comment 1, however, does not purport to clarify who is a "seller," but only to identify who may be a "user or consumer": "consumption includes all ultimate uses for which the product is intended, and the *customer* in a beauty shop to whose hair a permanent wave solution is applied by the shop *is a consumer.*" § 402A Restatement of Torts, Second, comment 1 (emphasis added). Although the comment suggests that the person to whose hair the wave solution is applied may sue under § 402A, the comment does not suggest *from whom* the customer may recover for the "defective product."

The dispositive issue in the present case is not whether the appellant is a consumer, but whether the hospital is a "seller" of the defective product. Since comment 1 sheds no light on this pertinent question, in my opinion it is inapplicable here.