**Marijane C. KARIBJANIAN Individually and as Executrix of the Estate of George J. Karibjanian**

v.

**THOMAS JEFFERSON UNIVERSITY HOSPITAL et al.**

Civ. A. No. 89–1891.

United States District Court, E.D. Pennsylvania.

July 26, 1989.

Martin M. Krimsky, Steven E. Angstreich, Michael Coren, Patricia D. Wynne, Krimsky, Levy, Angstreich, Finney, Mann & Burkett, P.C., Daniel I. Murphy, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for plaintiff.

Fredric L. Goldfein, Goldfein & Joseph, Philadelphia, Pa., for William H. Whitely, III, M.D.

Gary B. Cutler, Margolis, Edelstein, Scherlis, Sarowitz and Kraemer, Philadelphia, Pa., for Forest Laboratories, Inc.

Richard R. Galli, Philadelphia, Pa., for Thomas Jefferson University Hosp.

Michael P. Creedon, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for O'Neal, Inc.

Norbert F. Bergholtz, Susan L. Oppenheimer, Anthony J. Tamburro, Dechert, Price & Rhoads, Philadelphia, Pa., for Tennessee Gas Pipeline Co.

William A. Jones, Sherr, Joffe & Zuckerman, West Conshohocken, Pa., for Chromalloy American Corp. and Chromalloy Pharmaceutical Corp.

## OPINION

JOSEPH S. LORD, III, Senior District Judge.

Plaintiff claims that her husband died as a result of exposure in 1956 to the substance Thorotrast, a form of thorium dioxide, with which he was injected during a diagnostic medical procedure called a cere-

bral arteriography.[1] She alleges Thorotrast is an inherently unsafe product and that defendants knew or should have known that it is so. Defendant Thomas Jefferson University Hospital ("Hospital") moves to dismiss several paragraphs of the complaint, pursuant to Fed.R.Civ.P. 12(b)(6).[2] In reviewing the sufficiency of the complaint, I am mindful that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957).

■ The Hospital asks that I dismiss three sub-paragraphs within ¶ 67 of the complaint, which begins:

[the Hospital] was jointly and/or severally negligent and grossly reckless in permitting its staff, associates, and personnel to use its equipment and products, including Thorotrast, for the purpose of performing a cerebral arteriography procedure, and in not monitoring its Thorotrast patients thereafter. Said negligent, careless and reckless conduct under the above alleged circumstances consisted of any and all of the following: ...

The first challenged sub-paragraph is (a), which states:

failing to undertake or support research to find a remedy or palliative procedure for the conditions, symptoms or untoward effects caused by Thorotrast ...

The Hospital argues that under Pennsylvania law, and moreover the law of any other state, a hospital has no duty to undertake or support research.

Plaintiff cites *Schwartz v. U.S.,* 230 F.Supp. 536, 540 (E.D.Pa.1964), in which the court held that once the government learned, or should have learned, that the thorium dioxide its physician had given years earlier to a patient was dangerous, the government had a duty to find the patient and warn him of the danger. Such a duty to warn may exist, if a warning would do any good. But ¶ 67(a) does not speak of giving warning, it speaks of undertaking or supporting research, which obviously would be a much more burdensome duty and one which, for all that one knows from the complaint, would have proven fruitless. Likewise, the illustrations to § 321 of the *Restatement (Second) of Torts,* which plaintiff also cites, demonstrate that a duty to warn may exist in a case like hers, but say nothing of a duty to undertake or support research. I will grant the Hospital's motion to dismiss ¶ 67(a).

■ The Hospital next challenges ¶ 67(f) and ¶ 67(s):

(f) failing to warn plaintiff's decedent or his family of the dangerous propensities, risks and consequences of the administration of Thorotrast; ...

(s) failing to require and/or obtain a proper informed consent from plaintiff's decedent prior to the use or administration of Thorotrast on [him].

The Hospital argues that, when the physician is not an employee of the hospital, the duty to warn and the duty to obtain the informed consent of a patient are imposed upon the physician and not upon the hospital.

Plaintiff argues that *Thompson v. Nason Hospital,* 370 Pa.Super. 115, 535 A.2d 1177, 1181, *alloc. granted,* 518 Pa. 642, 542 A.2d 1370 (1988) established that the Hospital had a duty of its own to exercise reasonable care in supervising those physicians

1. According to *Stedman's Medical Dictionary,* 5th Ed. (1982), a cerebral arteriography, also called a cerebral angiography, is "visualization of an artery or arteries by x-rays after injection of a radiopaque contrast medium." "[I]njection may be made by percutaneous puncture or after exposure...." It appears from the complaint that Thorotrast was used as the contrast medium.

2. Although the Hospital presented no extrinsic material with its motion, the plaintiff presented some materials with its response. Plaintiff's materials would be of little consequence to the disposition of the Hospital's motion, particularly because one deposition to which plaintiff makes frequent reference in her brief was not attached to her brief. Because there has been relatively little time for discovery, I will exclude the extrinsic materials and treat this as a straight 12(b)(6) motion.

who practiced under its roof. The duty of reasonable care in *Thompson* is not founded on *respondeat superior*, so the fact that the physician was not an employee of the hospital is unimportant. I am persuaded by plaintiff's position on this point. If before trial Pennsylvania's Supreme Court materially alters the rule established by the Superior Court in *Thompson*, however, I will upon motion reconsider my ruling on this point.

■ The Hospital also argues, with respect to ¶ 67(s), that the duty to obtain informed consent does not extend to the administration of a drug or a contrast medium like Thorotrast, being instead limited to surgery. If this premise is correct, then neither the Hospital nor the physician could be liable for not informing the patient of the hazards of Thorotrast and obtaining his consent before administering it.

The parties agree that *Boyer v. Smith*, 345 Pa.Super. 66, 497 A.2d 646 (1985) is the leading Pennsylvania case on this point. In *Boyer*, the court held that a physician had no duty to obtain the informed consent of his patient before prescribing an oral medication for her, a medication which gave the patient a severe bad reaction. The court reasoned that the duty to obtain informed consent is rooted in the rule that any touching of a patient by a physician is technically a battery unless it is done with the patient's knowing consent. *Gray v. Grunnagle*, 423 Pa. 144, 155, 223 A.2d 663 (1966). Since merely prescribing an oral medication does not involve a touching, no battery could occur, so no informed consent would be needed.

Having reasoned thus, the *Boyer* court went beyond the facts of the case before it to state that "the doctrine of informed consent should be limited ... to only those cases involving surgical or operative medical procedures." 345 Pa.Super. at 72, 497 A.2d at 649. The middle ground over which the *Boyer* court leapt includes a case like the plaintiff's in which the patient is injected with a substance. A touching oc-

curs, perhaps a painful one, yet it is something less than surgery. Judge Hoffman of the Superior Court suggested in his dissent in *Malloy v. Shanahan*, 280 Pa.Super. 440, 421 A.2d 803, 806 (1980) that it is absurd to impose a duty when drugs are injected but not when they are swallowed. Judge Hoffman argued that the battery rationale should be abandoned altogether in favor of a negligence one. The *Boyer* court, while quoting from *Malloy*, did not discuss the injection issue.

When it is the need for an injection which the patient disputes, it is reasonable to impose a duty of informed consent. For example, there are some drugs which may be administered either orally or by injection; the decision to inject such a drug should be made only with the patient's informed consent. On the other hand, when it is the substance administered, not the method of administration, which is challenged I agree with Judge Hoffman that it is absurd to invoke the duty of informed consent simply because the physician or nurse must touch the patient to inject the drug.

Plaintiff claims in ¶ 66 both that (1) no injection was needed and, in the alternative, that (2) even if an injection were needed something other than Thorotrast should have been used. I will let ¶ 67(s) stand, with the understanding that it is limited to the first theory.[3]

■ Finally, the Hospital asks me to dismiss paragraphs 80 and 81 of the complaint, which allege

80. [The Hospital] sold, supplied and/or distributed a defective and dangerous product, Thorotrast, which was administered to plaintiff's decedent substantially unchanged from the form that it was received in.

81. [The Hospital] is strictly liable to plaintiff's decedent for the injuries and resulting death sustained under §§ 402A and/or 519 and 520 of the *Restatement*

---

**3.** The Hospital also argues that informed consent sounds in intentional tort, not negligence. For purposes of ruling on a Rule 12(b)(6) motion it is irrelevant where a claim sounds, so long as it does sound.

*(Second) of Torts* as adopted in the Commonwealth of Pennsylvania.

Section 402A provides, in part, that

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer ... is subject to liability ... if (a) the seller is engaged in the business of selling such a product....

The Hospital cites two Superior Court decisions which hold that a hospital cannot be liable under § 402A when a defective surgical tool injures a patient during an operation. *Podrat v. Codman–Shurtleff,* —— Pa.Super. ——, 558 A.2d 895 (1989) (forceps); *Grubb v. Albert Einstein Medical Center,* 255 Pa.Super. 381, 387 A.2d 480 (1978) (bone plug cutter).[4] The *Podrat* court reasoned that a hospital is primarily in the business of supplying services, and "supplies" surgical tools only incidentally; and that the medical service (a back operation) could not have been performed without the use of the instrument. —— Pa.Super. at ——, 558 A.2d at 898. The Hospital contends that likewise it was not in the "business of selling" Thorotrast; rather that it was in the business of providing services.

Plaintiff seeks to limit the holding in *Podrat* to products which are approved but turn out to be defective; she argues that Thorotrast, because it is alleged to be inherently unsafe, is distinguishable. I do not find this proposed distinction persuasive.

It might be supposed that surgical tools like the forceps in *Podrat* and the bone plug cutter in *Grubb* are different from contrast media because those surgical tools may be reused on a number of patients, while a dose of Thorotrast is completely consumed by a single patient. However, in *Francioni v. Gibsonia,* 472 Pa. 362, 372 A.2d 736, 739 (1977), the court held that lessors of durable products are liable to the same degree as sellers of such products.

A decision of a state's intermediate appellate court "is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. A.T. & T.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139, 144 (1940); *General Electric v. Ger–Beck,* 806 F.2d 1207, 1209 (3d Cir.1986). There are, I think, significant data which suggest Pennsylvania's Supreme Court would in some circumstances hold a hospital liable under § 402A as a seller of a product like Thorotrast, if it is the product itself rather than the procedure by which it was administered which is alleged to have been defective.

Comment (f) to § 402A explains what the *Restatement*'s authors meant by the "business of selling."

It is not necessary that the seller be engaged solely in the business of selling such products. Thus the rule applies to the owner of a motion picture theatre who sells popcorn or ice cream, either for consumption on the premises or in packages to be taken home.

The rule does not, however, apply to the occasional seller of food or other such products who is not engaged in that activity as a part of his business. Thus it does not apply to the housewife who, on one occasion, sells to her neighbor a jar of jam....

So long as a hospital *regularly* supplies contrast media to its patients, albeit as an incidental part of its service operations, it seems to fall within § 402A as explained by comment (f). The comment draws no distinction between suppliers of goods who also supply services, and those suppliers who simply supply goods.

Pennsylvania's Supreme Court recently cited comment (f) to § 402A with approval in *Musser v. Vilsmeier Auction Co.,* —— Pa. ——, 562 A.2d 279 (1989). The *Musser* court held that an auctioneer who never owns, operates or controls the products he auctions is not a "seller" of the products for § 402A purposes, unless he or she has a "direct continuous course of dealing with a manufacturer or sales organization for

---

**4.** In *Grubb,* the per curiam opinion states that a hospital can be liable under § 402A; however, four of the seven judges dissented from this statement, and the hospital was held liable only under a negligence theory.

their specific products." —— Pa. at ——, 562 A.2d at 283. Besides citing comment (f), the *Musser* court reviewed the purposes behind § 402A as they were expressed in *Francioni*, 472 Pa. at 368–69, 372 A.2d at 739:

> (1) In some instances the lessor, like the seller, may be the only member of the marketing chain available to the injured plaintiff for redress; (2) As in the case of the seller, imposition of strict liability upon the lessor serves as an incentive to safety; (3) The lessor will be in a better position than the consumer to prevent the circulation of defective products; and (4) The lessor can distribute the cost of compensating for injuries resulting from defects by charging for it in his business, i.e. by adjustment of the rental terms.

The *Musser* court reasoned that the auctioneer should not be liable because the injured party could always sue the owner of the item auctioned, rather than the auctioneer; and because the auctioneer would be in no better position than the consumer to influence the safety of the design or manufacture of the product. The auctioneer had not been shown to have a continuing relationship with the manufacturer; rather he was "an ad hoc salesman of the goods of another for a specific purpose and a specific time." *Id.* at —— – ——, 562 A.2d at 283. While the auctioneer might have been in a position to distribute the costs of compensation, that factor alone did not justify imposing liability under § 402A, the court said.

It is not beyond doubt that plaintiff can prove no facts which would establish that the Hospital was a seller of Thorotrast for purposes of § 402A. Unlike the product auctioned in *Musser*, the Thorotrast allegedly came from the Hospital's own inventory, ¶ 33, which I take to mean the Hospital owned it until it supplied it to plaintiff's decedent, via his physician, and that the Hospital regularly supplied Thorotrast to other patients. Plaintiff must be given the opportunity to present evidence concerning the other factors identified in *Musser* and *Francioni*.

I am also influenced by the thoughtful discussion of Judge Pollak in *Villari v. Terminix*, 677 F.Supp. 330, 333–334 (E.D. Pa.1987), in which he held that a professional pesticide application firm could be liable under § 402A even though it provided services as well as the pesticides themselves.[5] Judge Pollak noted that the defendant was the sole "retail" supplier of the pesticide, and that it told its customers that the product was safe. On the other hand, at least one court, in California, has held that hospitals cannot be liable under § 402A for defective drugs, under reasoning similar to that in *Podrat. Carmichael v. Reitz*, 17 Cal.App.3d 958, 95 Cal.Rptr. 381 (1971). *See also Flynn v. Langfitt*, 710 F.Supp. 150, 152 (E.D.Pa.1989) (hospital not liable under § 402A for defective tissue graft).

I will deny the Hospital's motion to dismiss ¶¶ 80 and 81 of the complaint. Plaintiff will, however, have to establish the factual bases I outlined above before she can recover against the Hospital under § 402A. Neither party has briefed the question of whether the Hospital can be liable under § 519 and § 520 of the *Restatement (Second) of Torts*, dealing with abnormally dangerous activities. I will leave that imaginative theory of liability for another day.

### ORDER

AND NOW, this 26th day of July, 1989 IT IS ORDERED that sub-paragraph 67(a) of the complaint is DISMISSED; and that in all other respects the motion of defendant Thomas Jefferson University Hospital to dismiss certain claims is DENIED.

---

5. To offer another analogy, a restaurant patron who enjoys an exquisite souffle values the services of the chef more than the eggs with which it is made, since the eggs could be had for less than a dollar at any store. Nonetheless, if fate has it that the eggs are bad, the restaurant would be liable under § 402A as a supplier of eggs, even though the eggs were but an incidental part of what the patron paid for. And this is not to mention the services of the maitre d' who seats her, and the waiter who serves her.