**Eby v. Milton S. Hershey Medical Center**

*Gregory R. Reed,* for plaintiffs.
*Maureen Gallagher,* for defendant.

DOWLING, *J.,* June 18, 1993—

## TOO SOON TO TELL

A demurrer is rapidly becoming a knee-jerk reaction to any type of claim that is out of the ordinary. As literally thousands of cases have reiterated, it is basically an admission of the validity of the "pleaded" facts. In effect, it says what you allege is correct, true and accurate; but it doesn't add up to a cause of action. Its introduction at the very outset of a case before any fleshing out of discovery must be particularly scrutinized. When later in the proceedings, it adopts the name of a motion for summary judgment, or at the conclusion of trial evidence when it appears in the guise of a motion for a nonsuit, it has at least acquired an evidentiary maturity.

Before us is a medical malpractice action wherein it is alleged that the minor plaintiff, Joseph Eby, born January 22, 1992, was admitted May 15, 1992 to the defendant medical center for treatment for his failure to thrive. The complaint states that on May 27 he was fed at the medical center by means of intravenous tubes connected to a certain supposed beneficial solution, but that he suffered a full cardiopulmonary arrest requiring resuscitation and endoctrachael intubation. It is averred that said cardiopulmonary arrest was caused by electrolyte and metabolic imbalances secondary to an improper hyperalimental solution being introduced into Joseph Eby's body via the intravenous feeding tubes. It was further alleged that the aforesaid hyperalimentation solution was subsequently subjected to analysis and found to contain grossly excessive amounts of glu-

cose, potassium and sodium. As a result, to all intents and purposes, the baby is brain dead. After alleging various acts of negligence, there is a claim in Counts 3 and 4 against the defendant for strict liability, it being alleged:

"On or about May 27, 1992 defendant Milton S. Hershey Medical Center was engaged in the business of selling, furnishing and providing the hyperalimental solution which was given to plaintiff, Joseph Eby."

To these counts of strict liability, the defendant hospital has filed preliminary objections in the nature of a demurrer.

In *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966), Pennsylvania adopted section 402A of the Restatement of Torts (Second) which provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

Our Supreme Court has given an expansive interpretation to section 402A. See for example, *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 873

(1975), where it in effect eliminated the requirement that the defective product be unreasonably dangerous.

Defendant's sole objection to the application of section 402A in the instant case is that the defendant (despite the expressed assertion in paragraph 20 of the complaint) was not a seller of the hyperalimental solution.

Comment (f) to section 402A explains what the Restatement's authors meant by the "business of selling:"

"The rule stated in this section applies to any person engaged in the business of selling products for use or consumption. It therefore applies to any manufacturer of such a product, to any wholesale or retail dealer or distributor, and to the operator of a restaurant. It is not necessary that the seller be engaged solely in the business of selling such products. Thus the rule applies to the owner of a motion picture theatre who sells popcorn or ice cream, either for consumption on the premises or in packages to be taken home.

"The rule does not, however, apply to the occasional seller of food or other such products who is not engaged in that activity as a part of his business. Thus it does not apply to the housewife who, on one occasion, sells to her neighbor a jar of jam or a pound of sugar. Nor does it apply to the owner of an automobile who, on one occasion, sells it to his neighbor, or even sells it to a dealer in used cars, and this even though he is fully aware that the dealer plans to resell it. The basis for the rule is the ancient one of the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon that undertaking on the part of those who purchase such goods. This basis is lacking in the case of the ordinary individual who makes the isolated sale, and

he is not liabile to a third person, or even to his buyer, in the absence of his negligence. An analogy may be found in the provision of the Uniform Sales Act, §15, which limits the implied warranty of merchantable quality to sellers who deal in such goods; and in the similar limitation of the Uniform Commercial Code, §2-314, to a seller who is a merchant. This section is also not intended to apply to sales of the stock of merchants out of the usual course of business, such as execution sales, bankruptcy sales, bulk sales, and the like."

There appear to be five decisions which discuss the applicability of section 402A to hospitals. Two are from our intermediate appellate court, *Grubb v. Albert Einstein Medical Center,* 255 Pa. Super. 381, 387 A.2d 480 (1978) and *Podrat v. Codman-Shurtleff, Inc.,* 384 Pa. Super. 404, 558 A.2d 895 (1989); and three are federal court decisions from the Eastern District, *Flynn v. Langfitt,* 710 F. Supp. 150 (1989); *Karibjanian v. Thomas Jefferson University Hospital,* 717 F. Supp. 1081 (1989), and an unreported decision, *Lavalla v. Parker* (1991 W.L. 17757).

The latest Superior Court case, and the one relied upon by defendant, is *Podrat, supra.* There, during the course of surgery on the plaintiff's back, the tip of a pituitary forcep being used by the attending physician broke off and lodged within the disc space. Suit was based upon negligence, strict liability, and breach of warranty. At the close of the plaintiff's case, the trial court granted a nonsuit on the basis that there was no evidence that the instrument was manufactured by Codman-Shurtleff, Inc. The Supreme Court rejected the sole claim presented to the trial court on post-trial motions that the hospital should be held strictly liable as a supplier of medical instruments. The court felt that the defendant hospital was not a seller of the forceps

and that they had been purchased by the hospital not for resale but for use as the provider of a professional service. An earlier Superior Court decision (one by the entire court, unlike the panel decision of *Podrat*) had held to the contrary. In *Grubb, supra,* the defective product was the guard of a drill which slipped during an operation causing the drill to penetrate into a vertebrae of a patient. Although there was no unified voice from the court, the per curiam opinion clearly favored holding the hospital liable under strict liability. It stated:

"In reviewing the strict liability of Albert Einstein Medical Center we are considering a case of first impression in Pennsylvania. However, the Supreme Court of Pennsylvania has given a wide berth to section 402A and has found that liability extends to all sellers in the distributive chain. *Bialick v. Pittsburgh Brewing Company,* 430 Pa. 176, 242 A.2d 231 (1968). The court has further recognized that liability does not turn on the technical existence of a sale. *Hoffman v. Misericordia Hospital,* 439 Pa. 501, 267 A.2d 867 (1970).

"At least one court has held the view that mechanical and administrative services provided by hospitals should not necessarily be exempt from strict liablity. In *Johnson v. Sears, Roebuck & Co. [Columbia Hospital],* 355 F. Supp. 1065 (E.D. Wis.1973) the court felt that mechanical services provided by a hospital may be subject to strict liability even though the rendition of professional services is governed by a negligence standard.

"In adopting the strict liability as set forth we are making a reasonable extrapolation from the already expanding interpretation of 402A and clear policy considerations. The surgical patient is without control over the procedures and instruments used upon him. His health and future safety are at the mercy and skill of the treating physicians and the instruments he employs.

It is elementary that if a hospital supplies equipment to an operating physician the hospital must appraise themselves of the risks involved and adopt every effort to insure the safety of the equipment chosen. Furthermore, there was testimony in this case to indicate that the defect could have been discovered by a preliminary test on animal bone. To require this minimal technique is not unreasonable and may very well have avoided the injuries to the plaintiff." *Grubb, supra* at 401, 387 A.2d at 490.

Judge DelSole, writing in *Podrat,* noted that the *Grubb* opinion in support of holding the hospital strictly liable was not joined by a majority of the participating judges and was, hence, not precedential. This may well be, but can it be said with total confidence that without a definitive opinion from our Supreme Court, there is not some question about the issue.

The federal decisions go both ways. *Flynn, supra* would not allow strict liability in a case involving tissue graft. There, the court took the position that, although the Pennsylvania Superior Court had upheld a jury verdict against the hospital on strict liability claim (*Grubb*), our Supreme Court had not yet spoken. Thus, it felt that the decision of the lower state court was not controlling. *Karibjanian, supra* went the other direction. This case is factually quite similar because it involved an injection of Thorotrast during a cerebrial arteriograph which was alleged to be an inherently unsafe product. Judge Lord, in refusing to dismiss the count of strict liability, noted:

"There are, I think, significant data which suggest Pennsylvania's Supreme Court would in some circumstances hold a hospital liable under section 402A as a seller of a product like Thorotrast, if it is the product itself rather than the procedure by which it was ad-

ministered which is alleged to have been defective."
*Karibjanian, supra* at 1085.

The *Flynn* case, *supra,* also concerned the admini-
stration of a drug during a surgical procedure from
which the plaintiff developed an infection. While they
granted the motion of the hospital for partial summary
judgment, it should be noted that the motion was *un-
opposed.*

Where does this leave the trial court. One must take
note of the procedural posture of the above decisions,
particularly *Podrat, supra,* which may well be con-
trolling. There, the matter came to a conclusion as the
result of a nonsuit after an opportunity had been pre-
sented to the plaintiff to present its evidence. Nor can
we overlook the allegation of paragraph 20 of the com-
plaint which averred that the defendant was engaged
in the business of selling, furnishing and providing the
hyperalimental solution.

If there is any doubt as to the propriety of a judgment
in favor of a demurring party, it should not be entered.
*Creeger Brick and Building Supply, Inc. v. Mid-State
Bank and Trust Co.,* 385 Pa. Super. 30, 33, 560 A.2d
151, 152 (1989). Though it seems like a long shot,
"what though the odds be great or small," we shouldn't
declare the victor before the players have even suited
up and at least gone out on the field for their pre-game
warmup.

Accordingly, we enter the following:

### ORDER

And now, June 18, 1993, defendant's preliminary
objections are dismissed.