James Lewis JONES, Plaintiff,

v.

PHILADELPHIA COLLEGE OF OSTE-OPATHIC MEDICINE, Hospital of the Philadelphia College of Osteopathic Medicine, Osteopathic Medical Center of Philadelphia, American Red Cross Blood Services, Penn–Jersey Region, American Red Cross, Abbott Laboratories, Inc., Conrad T. Fraider, D.O., P.C., Conrad T. Fraider, D.O., Philip Spinuzza, D.O., Dr. Dickerson, and Mary Kopaun, R.N., jointly, severally and in the alternative, Defendants.

Civ. A. No. 92–CV–5731.

United States District Court, E.D. Pennsylvania.

Feb. 8, 1993.

**1126**

Benjamin Folkman, Van Syoc Law Offices, Chartered, Philadelphia, PA, Evan A. Blaker, Van Syoc Law Offices, Chartered, Cherry Hill, NJ, for plaintiff.

Paul A. Bechtel, Jr., Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, for Philadelphia College of Osteopathic Medicine, Hospital of Philadelphia College of Osteopathic Medicine, Osteopathic Medical Center of Philadelphia, Philip Spinuzza, D.O., Dr. Dickerson.

John J. Mulderig, Brown & Connery, Westmont, NJ, for American Red Cross Blood Services, Penn–Jersey Region, Mary Kopaun, R.N.

Albert L. Piccerilli, Manta and Welge, Philadelphia, PA, for Abbott Laboratories, Inc.

David J. Otis, Media, PA, Michael A. McKernan, Plymouth Meeting, PA, David J. Otis, Beatty, Young, Otis & Lincke, Media, PA, for Conrad T. Fraider, D.O., P.C.

MEMORANDUM

BUCKWALTER, District Judge.

## I. *Introduction*

This case involves plaintiff James Lewis Jones' allegations that he received HIV contaminated blood during a surgery performed at the Philadelphia College of Osteopathic Medicine in October, 1986. Defendants Philadelphia College of Osteopathic Medicine, Hospital of the Philadelphia College of Osteopathic Medicine, Osteopathic Medical Center of Philadelphia, Philip Spinuzza, D.O. and Dr. Dickerson have moved to dismiss certain paragraphs in the complaint pursuant to Fed.R.Civ.P. 12(b)(6). These paragraphs allege, essentially, that the plaintiff was not informed of all of the alternatives to blood transfusions, including the options of autologous blood donations (banking one's own blood), designated donor transfusions (banking the blood of friends and relatives known to be free of the HIV virus), and deferral of surgery until such time as it could be assured that the blood supply was 100% safe. These paragraphs also allege that plaintiff was not apprised of all of the risks involved in receiving a blood transfusion, including the risk of contracting HIV, the limitations of the Elisa test for HIV, and the risk of false negatives. These moving defendants contend that a blood transfusion is not a surgical or operative procedure, and thus there is no duty to obtain an informed consent from a patient regarding a transfusion. They also contend that even if an informed consent is necessary, only the treating physician, not the hospital or other persons, have the duty to inform the patient. Plaintiff argues that these defendants did have a duty to inform him of the risks and options involved, and that there are alternative theories (other than the doctrine of informed consent) upon which to hold these defendants liable, including failure to warn, breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose.

Furthermore, one of the named defendants, Dr. Dickerson, is deceased. His counsel has moved to dismiss Dr. Dickerson from the action. In response, plaintiff has made a cross-motion to substitute the estate of Dr. Dickerson for Dr. Dickerson as a party defendant.

For the following reasons, moving defendants' motion to dismiss is granted in part and denied in part. However, plaintiff will be given leave to amend the dismissed paragraphs of the complaint within twenty days in accordance with this memorandum and order. Plaintiff's cross motion to substitute the estate of Dr. Dickerson as a defendant is granted.

## II. *Facts*

On or about October 6, 1986, plaintiff James Lewis Jones ("plaintiff" or "Jones") was admitted to the Hospital of the Philadelphia College of Osteopathic Medicine and the Osteopathic Medical Center, both of which institutions are under the control and affiliated with the Philadelphia College of Osteopathic Medicine, by his primary treating physician, Conrad Fraider, D.O., for the purposes of undergoing a lumbar myelogram administered to diagnose the cause of plaintiff's ongoing severe low back pain.[1] Dr. Fraider advised plaintiff that he should undergo surgery in order to alleviate his condition. On or about October 8, 1986, plaintiff underwent the surgery at the Hospital of the Philadelphia College of Osteopathic Medicine and the Osteopathic Medical Center, with Dr. Fraider as the attending physician and Dr. Spinuzza as the assisting physician. During the surgery, plaintiff lost blood and accordingly received nine units of packed cells; two units of fresh frozen plasma were administered intraoperatively. One of the units of fresh frozen plasma came from an anonymous donor who was infected with the virus known to cause AIDS, the HIV virus. Prior to the transfusion of this unit of blood, plaintiff was never advised by any of the defendants, nor did he know, that there was a potential risk of contracting AIDS as a result of contamination of the unit of blood by the HIV virus.

1. The factual narrative is drawn from the (second amended) complaint.

Paragraph 23 of the second amended complaint alleges that all defendants were negligent by reason of their failure to advise plaintiff of the preferability of preoperative donation of his own blood for storage, or of the right to have friends and family who were known to be free of the virus donate blood, such that plaintiff could have the benefit of a designated donor transfusion.

Paragraph 24 of the second amended complaint alleges that none of the three physicians involved in the plaintiff's surgery or medical screening (presumably defendants Drs. Fraider, Spinuzza and Dickerson) advised the plaintiff of the limitations of the Elisa test kit used on blood donated by anonymous donors, the right to autologous donations or designated donor transfusions, the risk of false negatives in the testing procedure, the risk of contracting HIV or AIDS from a blood transfusion, or that the surgery could be deferred until such time as the blood supply was "100% safe."

Paragraph 26 of the second amended complaint alleges that prior to the surgery, on or about October 6, 1986, the plaintiff executed a document encaptioned "Informed Consent to Operation, Medical Procedure, Blood Transfusion", the contents of which were specified by the Hospital of the Philadelphia College of Osteopathic Medicine in conjunction with the Philadelphia College of Osteopathic Medicine and the Osteopathic Medical Center, which form failed to inform him of the aforementioned options and risks.

Defendants Philadelphia College of Osteopathic Medicine, Hospital of the Philadelphia College of Osteopathic Medicine, Osteopathic Medical Center of Philadelphia, Philip Spinuzza, D.O. and Dr. Dickerson (collectively "moving defendants") have moved to dismiss Paragraphs 23, 24 and 26 of the second amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. They argue that they cannot be held liable for the alleged failure to adequately inform plaintiff, since they had no duty to obtain patient's informed consent, and that informed consent is not necessary for blood transfusions anyway. Plaintiff responds that these defendants can be held liable for their failure to obtain his informed consent, and that alternative theories of liability attach also (failure to warn, breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose).

Dr. Dickerson is named as a defendant in this action. He is deceased. His counsel has moved to dismiss him as a party for that reason. Plaintiff has responded with a cross motion to substitute the estate of Dr. Dickerson as a party defendant.

## III. *Discussion*

### A. *Standard of Review*

▐ A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). All well-pleaded factual allegations in the complaint must be taken as true. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Rocks*, 868 F.2d at 645. The court must draw all reasonable inferences from the allegations and view them in the light most favorable to the non-moving party. *Rocks*, 868 F.2d at 645.

### B. *Informed Consent*

The Pennsylvania Supreme Court introduced the doctrine of informed consent to Pennsylvania law in *Gray v. Grunnagle*, 423 Pa. 144, 223 A.2d 663 (1966). The *Gray* opinion was summarized by the District Court for the Middle District of Pennsylvania in *Salis v. United States*, 522 F.Supp. 989, 997 (M.D.Pa.1981):

Writing for the majority, Justice O'Brien began with the proposition that consent to medical therapy is contractual in nature. According to this rationale, the physician and patient have an agreement concerning the scope and nature of the latter's care, and the doctor has no right to come into contact with the patient's

body except within the terms of the compact. Thus, a surgeon who treats an individual without that person's consent commits a technical battery and is responsible for the consequences of the tort.... Furthermore, after reviewing scholarly comment and precedents from other jurisdictions, Justice O'Brien concluded that assent to treatment is not really conscious unless made with knowledge of the risks and possible benefits. On this basis, the majority ruled that consent is only valid if the individual grants it after being apprised of such important matters as the nature of the therapy, the seriousness of the situation, the disease and organs involved, and the potential results of the treatment.... After an examination of the record, Justice O'Brien declared that the issue of consent had been properly placed before the jury and the verdict should be allowed to stand.

(Citations and footnotes omitted).

The doctrine of informed consent was further explored by the court in *Cooper v. Roberts*, 220 Pa.Super. 260, 286 A.2d 647 (1971). There, the Superior Court stated:

The law in this Commonwealth is that where a patient is mentally and physically able to consult about his condition, in the absence of an emergency, his 'informed consent' (as now defined by *Gray*) is a prerequisite to a surgical operation by his physician. An operation without such informed consent is a technical assault, making the physician liable for any injuries resulting from the invasion, regardless of whether the treatment was negligently administered.

*Id.* 286 A.2d at 649 (citations and footnote omitted).

■ In determining whether a patient's consent was "informed," the standard is whether the physician disclosed all those facts, risks, and alternatives that a reasonable man in the situation which the physician knew or should have known to be the plaintiff's would deem significant in making a decision to undergo the recommended treatment. *Id.* at 650. That issue is for the factfinder. *Jeffries v. McCague*, 242

Pa.Super. 76, 84, 363 A.2d 1167, 1171 (1976).

1. Is a patient's informed consent necessary for a blood transfusion?

■ In Pennsylvania, the doctrine of informed consent is limited to those cases involving surgical or operative procedures. *Boyer v. Smith*, 345 Pa.Super. 66, 497 A.2d 646, 649 (1985). This is so because the doctrine of informed consent is grounded in battery. In order for the doctor to touch the patient without committing a tort, informed consent is necessary. Where a technical battery does not occur, Pennsylvania courts have steadfastly refused to invoke the doctrine of informed consent. For example, in *Wu v. Spence*, 413 Pa.Super. 352, 605 A.2d 395 (1992) the court refused to expand the doctrine to include administration of therapeutic drugs. In that case, the claimed lack of consent arose from the failure to disclose potential side effects of the drug. The court reasoned that although a touching occurs when the drug is administered, it is not the lack of consent in regard to the administration of the drug which is at issue. Thus, since no harm is done by the touching, the informed consent doctrine is not applicable. *Accord, Malloy v. Shanahan*, 280 Pa.Super. 440, 421 A.2d 803 (1980); *Boyer v. Smith*, 345 Pa.Super. 66, 497 A.2d 646 (1985). These courts found that there was no battery upon which to form a basis for a requirement of informed consent. Moving defendants argue that a blood transfusion, like administration of a drug, is not a surgical or operative procedure and therefore informed consent is not required.

This issue must be considered within the larger context of the surgery which plaintiff underwent. Plaintiff did not consent merely to a blood transfusion but to surgery designed to correct his back problems. Where informed consent applies, a physician has a duty to inform the patient of "all material risks which are collateral to a given procedure, including, at least, the nature of the operation to be performed, the seriousness of it, the organs of the body involved, the disease or incapacity

sought to be cured, and the possible results." *Kaskie v. Wright,* 403 Pa.Super. 334, 589 A.2d 213, 215 (1991) (citations omitted). A physician cannot inform a patient of all of the material risks of a surgical or operative procedure without also informing him of the risks involved with a blood transfusion where a transfusion is a potential part of the procedure. The analogy to the administration of therapeutic drugs fails because the use of the drugs, and their side effects, in the above cases was independent of any surgical or operative procedure. If the drugs became necessary as a result of some surgical or operative procedure, I believe the Pennsylvania courts would find that an informed consent to that procedure would have to include knowledge of the side effects of those drugs.

In accordance with the above analysis, I find that the informed consent doctrine is appropriate within the context of plaintiff's blood transfusion. However, I must also ascertain if it was the duty of any of these moving defendants to so inform the plaintiff.

2. Who can be held liable for failure to obtain an informed consent?

■ Also at issue in this case is whether any of the moving defendants had the duty to obtain plaintiff's informed consent. In *Friter v. Iolab Corp.,* 414 Pa.Super. 622, 607 A.2d 1111, 1113 (1992), the court discussed the duty of a non-physician to obtain a patient's informed consent. *Friter* concerned the liability of defendant Wills Eye Hospital for injuries suffered by plaintiff as a result of the implantation of an experimental lens into plaintiff's eye following cataract surgery. The court noted that Pennsylvania case law reflects the notion that only the physician who performs the medical procedure has the duty to obtain consent, and thus only that physician may be held liable on that basis. Nonetheless, the court found that the defendant hospital was bound by FDA regulations requiring it to obtain an informed consent since it was participating in experimental studies. Furthermore, the court held that the hospital could also be held liable for

battery (lack of informed consent) since it intended that the patient come in contact with a foreign substance as part of the investigational study.

The *Friter* case is clearly distinguishable from the case at bar. Neither of the two reasons upon which the *Friter* court found that the hospital could be liable is present in this case. Jones has not alleged that any of the moving defendants were bound by FDA regulations to obtain an informed consent. Nor has he alleged that any of the moving defendants specifically intended that Jones come in contact with the blood. Currently these are the only bases for holding a non-physician liable in Pennsylvania for failure to obtain a patient's informed consent. Thus, defendants Philadelphia College of Osteopathic Medicine, Hospital of the Philadelphia College of Osteopathic Medicine, and Osteopathic Medical Center of Philadelphia (collectively the "Hospital defendants") cannot be held liable on a failure to provide informed consent theory of liability.

Nor can Drs. Spinuzza or Dickerson be held liable on this theory. Plaintiff has clearly alleged in the complaint that Dr. Fraider was his "primary treating physician," that Dr. Fraider advised plaintiff that he should undergo surgery, and that Dr. Fraider was the attending physician at the surgery. Dr. Spinuzza is alleged to be the assisting physician and Dr. Dickerson is alleged to have been involved in the "medical clearing" of plaintiff for surgery. From these allegations, it is clear that only Dr. Fraider can be held responsible for the duty to obtain an informed consent. There are no cases in Pennsylvania which discuss exactly who, among several physicians involved in a surgical procedure, has the duty to obtain informed consent. However, I think it is clear that where, as in this case, there is a "primary treating physician" who also signed the patient's consent form as the "physician informant," the duty is his and his alone.

3. Liability based on the contents of the consent forms plaintiff signed

■ Plaintiff signed two documents relating to consent to the surgery. The first

is labeled "Informed Consent to Operation, Medical Procedure, Blood Transfusion" dated October 7, 1986, the day before the surgery. A second form, labeled "Agreement for Blood Transfus" [sic] is dated October 10, 1986, two days after the surgery. Both of these forms contain the logo of the Philadelphia College of Osteopathic Medicine and the name "Hospital of the Philadelphia College of Osteopathic Medicine." Plaintiff argues that by constructing the forms they have "gratuitously undertaken this obligation [to obtain a patient's informed consent] and therefore have a duty to make certain that the informed consent forms fully inform patients such as James Lewis Jones of the risks associated with blood transfusion."

The second document was apparently executed on October 10, 1986; plaintiff has not alleged otherwise. Therefore, plaintiff cannot assert that this form imposed a duty on any of the moving defendants regarding the surgery at issue since the form was signed after the surgery.

The first document presents a more difficult case. Paragraph 5 of that document reads:

> I understand that it may be necessary for me to receive blood transfusions. Likewise, I understand that the blood will be supplied from sources available to the Hospital in accordance with my blood type. I understand that, in certain rare instances, the blood supplied might be defective, and as a result may lead to the transmission of viral hepatitis or other diseases. I likewise understand that there is no practical method for the Hospital to determine such a defect. I hereby submit to blood transfusions if necessary, with the foregoing understandings. I agree that I will not hold the Hospital responsible, and in consideration of the medical services provided to me, hereby release the above-named physician, his associates and assistants, the Hospital of the Philadelphia College of Osteopathic Medicine, its agent employees, and staff, and the Philadelphia College of Osteopathic Medicine and its personnel from any and all liability which might arise out of the delivery of defective blood.

Plaintiff may indeed have a valid cause of action against the Hospital defendants based on the contents of this form. Moving defendants have characterized the paragraphs they have moved to dismiss as alleging only a lack of informed consent, while paragraph 26 clearly alleges something else. Accordingly, the Hospital defendants' motion to dismiss paragraph 26 must be denied.

### C. *Other Theories of Liability*

■ It is well settled that under the liberal federal pleading rules, a complaint need not spell out the theory of liability under which plaintiff hopes to recover. *See Hammie v. Social Sec. Admin.,* 765 F.Supp. 1224 (E.D.Pa.1991); *See also Evans Products Co. v. West American Insurance Co.,* 736 F.2d 920, 923 (3d Cir. 1984). This issue often arises when a plaintiff succeeds at trial on a theory he did not specifically plead. However, Fed. R.Civ.P. 8(a) does require a short and plain statement of the claim showing that the pleader is entitled to relief. As a practical matter, this requires the identification of some theory of liability. This is especially true where, as here, there is a dispositive motion before the court such as a motion to dismiss for failure to state a claim. Moving defendants have characterized the paragraphs which they have moved to dismiss as allegations of lack of informed consent. Since plaintiff cannot recover against the moving defendants based on informed consent, he must show that he is entitled to relief based on some other theory.

In his memorandum opposing this motion to dismiss, plaintiff has suggested several other theories of liability, including failure to warn, breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose as well as causes of action based on sections 321, 322, 323, and 324A of the Restatement (2d) of Torts.

Moving defendants have not argued against these theories. They have argued only against an informed consent theory,

which is a logical characterization of the paragraphs 23 and 24, and they have shown that the plaintiff is not entitled to relief against them on that theory. Thus, paragraphs 23 and 24 of the complaint are dismissed against all moving defendants. However, plaintiff is hereby granted leave to amend the complaint, if he can allege a specific legal theory by which he may hold moving defendants liable, or a basis for a duty by these defendants to obtain the plaintiff's informed consent. In so doing, plaintiff should make it clear which defendants are the subject of which theory of liability.. As currently structured, only paragraphs 23 ("all defendants"), 24 ("the three physicians involved in the plaintiff's surgery or medical screening") and 26 (the Hospital defendants) appear to allege anything against the moving defendants. Thus, unless plaintiff amends the complaint in accordance with this opinion, defendants Dr. Spinuzza and the estate of Dr. Dickerson will be considered dismissed from the case.

### D. Motion to Dismiss Dr. Dickerson

Under the liberal federal pleading rules, plaintiff is entitled to substitute the estate of Dr. Dickerson for Dr. Dickerson as a party to this action. Of course, as stated above, unless plaintiff re-pleads the allegations against Dr. Dickerson in accordance with this opinion, the estate of Dr. Dickerson will be dismissed as a party as well.

### IV. Conclusion

For the foregoing reasons, Paragraphs 23 and 24 are dismissed against the moving defendants. Leave to amend the complaint within twenty days in accordance with this opinion is granted. If no amendment is forthcoming, the defendants Dr. Spinuzza and the estate of Dr. Dickerson are dismissed from this action completely. Moving defendants' motion to dismiss Paragraph 26 is denied. Plaintiff's cross motion to substitute the estate of Dr. Dickerson for Dr. Dickerson as a party defendant is granted.