**Roberta M. DAVIS, Plaintiff,**

v.

**David H. HOFFMAN, M.D., Susan B. Puchini, R.N., and The Reading Hospital, Defendants.**

**Civil Action No. 96–5362.**

United States District Court,
E.D. Pennsylvania.

July 7, 1997.

Robert E. Myers, Coffey & Kaye, Bala Cynwyd, PA, for Roberta M. Davis, Plaintiff.

John R. Sparks, Jr., Lancaster, PA, Jacqueline M. Carolan, Labrum and Doak, Philadelphia, PA, Edwin L. Stock, Roland & Schlegel, P.C., Reading, PA, for David H. Hoffman, Susan B. Puchini, The Reading Hospital and Medical Center, Defendants.

*MEMORANDUM*

GAWTHROP, District Judge.

This case involves the removal of the plaintiff's uterus, allegedly without her consent. Reading Hospital and Medical Center (the "Hospital") moves to dismiss or strike the plaintiff's claims for battery by lack of informed consent and for punitive damages. *See* Fed.R.Civ.P. 12(b)(6) and 12(f). Additionally, Nurse Susan B. Puchini moves to dismiss the Complaint against her for failure to state a claim. I shall grant the Hospital's Motion to Dismiss as to the battery claim, but deny it as to the punitive damages. I shall also deny its Motion to Strike. Nurse Puchini's motion as to the plaintiff's claim of battery I shall grant, but shall deny it as to all other claims.

**Background**

According to the Complaint, the plaintiff, Roberta Davis, a resident of the State of New York, experienced pain in her lower abdomen and consulted Dr. David Hoffman. On August 1, 1994, he diagnosed her to be suffering from a fibroid uterus and prescribed a dilation-and-curettage procedure designed to remove the fibroids. The doctor further suggested a laparoscopy and hysteroscopy to search for cancer. The doctor's nurse, Susan Puchini, conducted a pre-surgical interview with the plaintiff in which she described a video hysteroscopy, a dilation-and-curettage procedure, a resectoscopic removal of submucous fibroids, a laparoscopy, and a laser myomectomy. The plaintiff avers that she specifically informed Dr. Hoffman and Nurse Puchini that she did not consent to a hysterectomy. They responded that they would awaken her during the operation to obtain her consent before proceeding to a hysterectomy. At no time did they inform the plaintiff that the doctor intended to perform a hysterectomy. On August 8, the plaintiff underwent a procedure that resulted in a hysterectomy, during which no one awakened her to discuss and explore possible alternatives, or if there was to be a hysterectomy, to first obtain her consent. Claiming that the hysterectomy caused her substantial injuries, she brings this diversity action against Dr. Hoffman, Nurse Puchini, and the Hospital.

**Standard Under Rule 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *See Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). A court must assume the truth of all well-pleaded allegations contained in the complaint and draw all reasonable inferences in the plaintiff's favor. *See id.* "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984).

**I. The Reading Hospital's Motion to Dismiss Claim of Battery by Lack of Informed Consent**

In response to the plaintiff's allegation that the Hospital committed battery by lack of informed consent to the hysterectomy, the Hospital asserts that Pennsylvania law places no duty on a hospital to obtain a patient's consent to an operation. It argues that Pennsylvania courts have applied the doctrine of informed consent only to physicians, not to hospitals.

The plaintiff responds that the Hospital gratuitously undertook to obtain her consent prior to the operation. Additionally, she contends that Pennsylvania law imposes on the Hospital *respondeat superior* liability for the torts of its agents, Dr. Hoffman and Nurse Puchini, under the doctrine of ostensible agency. Finally, she maintains that she has stated a cause of action against the Hospital sounding in negligence under corporate negligence theory. I examine below the three purported bases for the battery claim, but find all of them legally and factually insufficient.

**A. Duty to Obtain Informed Consent**

Pennsylvania law imposes on surgeons the duty to inform their patients of the material risks involved in operations, and to obtain their patients' consent to the operations before performing the surgery. *See Friter v. Iolab Corp.,* 414 Pa.Super. 622, 628, 607 A.2d 1111, 1113 (1992). Should a sur-

geon fail to obtain a patient's informed consent, a battery is committed when the scope of the operation exceeds the scope of the consent. This rule, however, applies only to the surgeon, and not to a hospital, which generally has no such duty, even if it is one of the hospital's surgeons who is operating in one of the hospital's operating rooms, working with the hospital's staff. *See id.* (quoting *Margotta v. Lancaster Gen. Hosp.*, 47 Pa. D. & C.3d 300, 305–306 (C.P.1987)). There are, however, two exceptions to this rule. Both are inapposite.

In *Friter*, 414 Pa.Super. at 628–29, 607 A.2d at 1113–14 (1992), the court dealt with an unusual factual scenario. There, the hospital had contracted with the FDA to participate in a clinical study involving the implantation of experimental intra-ocular lenses. They were so experimental that they had not yet obtained FDA approval. Hence, the FDA promulgated regulations requiring the hospital to obtain informed consent, using a very detailed, five-page consent form, setting forth with particularity the possibility of the existence of unknown risks, since the lenses were still being tested. The court held that the failure to obtain informed consent, under those particular circumstances, was actionable. There is no such regulatory/experimental scenario here, and thus the exception does not apply.

In *Jones v. Philadelphia College of Osteopathic Medicine*, 813 F.Supp. 1125, 1131 (E.D.Pa.1993), the hospital itself, of its own volition, undertook to prepare a consent form, bearing the name and logo of the medical college and the hospital in question. The court concluded that although the hospital had no duty under Pennsylvania law to obtain informed consent, once it nevertheless voluntarily assumed that duty, it had better do it right. Otherwise, it would be held accountable in a court of law.

This is but an example, in the medical context, of general negligence law concerning duty. One has, for example, no duty to drive one's neighbor to the airport. But if one nevertheless volunteers to undertake that good-neighborly task, and then drives negligently, causing the neighbor to be injured en route, one is held legally accountable. It is no defense to the negligent driving that the good neighbor had no duty to take the neighbor to the airport in the first place. Here, as well, a consent form authored and printed by the Hospital was used. There is no suggestion, however, that the deficiency in consent was in any way causally inadequate in the form. Rather, any failure is attributed to the omissions in the way the form was filled in, or in the way the patient was not filled in as to what was to be the next phase of the operation. Thus the form was causally irrelevant and cannot be a basis for finding liability. Thus, neither discrete, narrow exception to the general rule that only surgeons have the duty to obtain informed consent applies here.

## B. Respondeat Superior Liability through Ostensible Agency

■ Because the plaintiff looked first to Dr. Hoffman for care, the doctrine of ostensible agency does not here apply. In general, a principal incurs no *respondeat superior* liability for the torts of independent contractors it hires. *See McDonough v. U.S. Steel*, 228 Pa.Super. 268, 273, 324 A.2d 542, 545 (1974). Under the doctrine of ostensible agency, however, a hospital can become responsible for its independent contractor's torts if the patient "look[s] to the institution rather than the individual physician for care" and the "hospital 'holds out' the physician as its employee." *Capan v. Divine Providence Hosp.*, 287 Pa.Super. 364, 368, 430 A.2d 647, 649 (1980). "The rule normally applies where the plaintiff has submitted himself to the care or protection of an apparent servant in response to an invitation from the defendant to enter into such relations with such servant." *Restatement (Second) of Agency* § 267 cmt. a (1958). An example is the emergency room visit in which the patient goes to the hospital for care without any existing relationship with the physician about to treat her. *See Corrigan v. Methodist Hosp.*, 158 F.R.D. 70, 74 (E.D.Pa.1994). Courts have extended the principle to health maintenance organizations that limit the number of primary care physicians a patient may choose and invest that physician with the authority to refer patients to specialists.

*See McClellan v. Health Maintenance Org. of Pennsylvania,* 413 Pa.Super. 128, 604 A.2d 1053 (1992); *Boyd v. Albert Einstein Med. Ctr.,* 377 Pa.Super. 609, 547 A.2d 1229 (1988).

According to the Complaint, the plaintiff entered into a physician-patient relationship with Dr. Hoffman well before her admission to the Hospital. The Hospital did not refer her to Dr. Hoffman. The situation, as averred, is simply not one of ostensible agency.

### C. Corporate Negligence

Finally, the plaintiff seeks to recover under a theory of corporate negligence, whereby a hospital may be held liable for its own "failure to uphold the proper standard of care owed the patient." *Thompson v. Nason Hosp.,* 527 Pa. 330, 339, 591 A.2d 703, 707 (1991). This theory of liability, however, is grounded upon mere negligence, as opposed to the requirement of intent, inherent in the intentional tort of failure to obtain informed consent. Under this doctrine, a hospital must: 1) "use reasonable care in the maintenance of safe and adequate facilities;" 2) "select and retain only competent physicians;" 3) "oversee all persons who practice medicine within its walls;" and 4) "formulate, adopt and enforce adequate rules and policies to ensure quality care." *Id.* Nonetheless, "a hospital cannot be sued for corporate negligence for failure to seek informed consent under the traditional battery theory." 158 F.R.D. at 73; *but see Karibjanian v. Thomas Jefferson Univ. Hosp.,* 717 F.Supp. 1081, 1083–84 (E.D.Pa.1989) (hospital has duty to warn patient of unsafe product and obtain his informed consent before using the product, where patient contests hospital's need to administer it). Assuming *arguendo* that corporate negligence theory could include the duty to obtain informed consent, negligence could not satisfy the mental state requirement for battery. Therefore, the claim must fail.

### Punitive Damages Claim

The Hospital contends that this court should dismiss the plaintiff's claim for punitive damages because she has not alleged that it engaged in conduct sufficiently egregious to support such an award. The

plaintiff responds that the removal of her uterus without consent constitutes the reckless indifference or wanton misconduct necessary to support a claim for punitive damages. I agree it is patently egregious, amply sufficient to support an award of punitives. Therefore, I shall deny the Hospital's motion as to this claim.

### II. Alternative Motion to Strike

The Hospital has moved in the alternative to strike the informed consent and punitive damages claims. I have just dismissed the informed consent claim, but the punitive damages claim I shall not strike. Federal Rule of Civil Procedure 12(f) permits a court to strike from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter, factors not present here. Thus, I shall deny the Motion to Strike.

### III. Nurse Puchini's Motion

#### Negligence

Nurse Puchini argues that the plaintiff has failed to state a negligence claim against her for two reasons: (1) under Pennsylvania law, a nurse has no duty to obtain informed consent; and (2) Pennsylvania law does not permit a cause of action, grounded in negligence, to constitute battery; the act must be intentional. Plaintiff responds that Pennsylvania law imposes on nurses a duty of due care, distinct from any duty to obtain informed consent, and the facts of this case fall within the embrace of that general duty.

To the extent that the plaintiff could prove that Nurse Puchini's explanation of the operation fell short of the prudent nurse standard of care, she has stated a claim sounding in negligence. Pennsylvania law requires nurses to act in a reasonably prudent manner. *See Titchnell v. United States,* 681 F.2d 165, 170 (3d Cir.1982) (applying borrowed Pennsylvania law); *Baur v. Mesta Machine Co.,* 405 Pa. 617, 624, 176 A.2d 684, 688 (1962); *Navarro v. George,* 150 Pa.Cmwlth. 229, 234, 615 A.2d 890, 892 (1992). The plaintiff alleges that Nurse Puchini did not advise her of any alternative testing, treatment, or procedures. She fur-

**314**

ther alleges that the nurse failed to inform her properly of possible side effects and risks that could require a hysterectomy. Proof of these allegations could support a finding that Nurse Puchini acted negligently.

### Negligent Infliction of Emotional Distress

As for Nurse Puchini's contention that the plaintiff has not stated a claim for the negligent infliction of emotional distress, I disagree. Pennsylvania law permits a plaintiff to recover for any mental suffering that results from physical injury, however slight, if the defendant's negligence caused the physical injury. *See Murphy v. Abbott Labs.*, 930 F.Supp. 1083, 1086 (E.D.Pa.1996); *Tomikel v. Pennsylvania*, 658 A.2d 861, 863 (1995) (citing *Niederman v. Brodsky*, 436 Pa. 401, 403, 261 A.2d 84, 85 (1970)). The plaintiff alleges that, because of Nurse Puchini's negligence, she suffered physical injuries that have in turn resulted in emotional and psychological injuries. Proof of these allegations could support recovery.

### Battery by Lack of Informed Consent

Nurse Puchini asserts that, as a physician's nurse, she had no duty to obtain the plaintiff's informed consent to surgery. She further maintains that even if she did have such a duty, the allegations of her negligence do not support a claim for battery.

The plaintiff first responds that Nurse Puchini assumed the duty to obtain informed consent by giving her the Reading Hospital and Medical Center's informed consent form. In addition, she contends that Nurse Puchini incurred that duty through the doctrine of ostensible agency.

### A. Duty to Obtain Informed Consent

Because nurses do not have a duty to obtain informed consent, the plaintiff has not stated a claim for battery by lack of informed consent against Nurse Puchini. Pennsylvania law generally imposes no duty on persons other than surgeons to obtain informed consent before performing surgery. Thus, courts have not imposed the duty on nurses. Persons who assist the "primary treating physician" have no duty to obtain the patient's informed consent. *Jones*, 813 F.Supp. at 1130.

Nor has the plaintiff stated a claim for battery by lack of informed consent, because there is no allegation that Nurse Puchini committed a battery. The tort of battery by lack of informed consent includes as one of its components "technical" battery, an intentional tort. *Shaw v. Kirschbaum*, 439 Pa.Super. 24, 34–35, 653 A.2d 12, 17 (1994). A plaintiff may not ground an informed consent claim on negligence. *See id.; Kelly v. Methodist Hosp.*, 444 Pa.Super. 427, 432, 664 A.2d 148, 150 (1995). Instead, the defendant must actually intend contact with the plaintiff. *See Friter*, 414 Pa.Super. at 630–31, 607 A.2d at 1115 (hospital intended the placement of experimental devices in patient's body as part of clinical trial). Nothing in the Complaint supports the inference that Nurse Puchini intentionally touched the plaintiff.

### B. Vicarious Liability through Ostensible Agency

Because the doctrine of ostensible agency applies to independent contractors, not employees, the doctrine does not apply here. The doctrine makes a hospital vicariously liable for its independent-contractor physician's torts in situations where the patient looks primarily to the hospital for care and the hospital holds out the physician as its employee. *See Capan*, 287 Pa.Super. at 368, 430 A.2d at 649 (hospital engaged physician as independent contractor, not employee). An example includes a visit to an emergency room. The doctrine applies only to the conduct of independent contractors. According to the Complaint, however, Nurse Puchini acted as Dr. Hoffman's employee, not his independent contractor, at all relevant times. Consequently, the doctrine has no application here.

The doctrine also does not apply here because it makes the principal liable for the torts of agent, not the agent for the torts of the principal. Nurse Puchini, the agent of Dr. Hoffman, cannot be liable for his alleged intentional tort, under some sort of doctrine of *respondeat inferior*.

### Intentional Infliction of Emotional Distress

Nurse Puchini argues that the allegations of negligence are insufficient to satisfy the mental state requirement for the intentional infliction of emotional distress. I disagree. A jury could find that Nurse Puchini acted outrageously by not advising the plaintiff of the risks of the surgery. That would be enough to support recovery. *See Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir.1989).

### Punitive Damages

Nurse Puchini maintains that an award of punitive damages would not be justifiable. Noting that Pennsylvania law requires intentional, reckless, or malicious conduct to support a punitive damages claim, she asserts that the case involves only negligence. I disagree. The plaintiff responds that the unauthorized, intentional removal of her uterus could justify an award of punitive damages. I fully agree.

### *ORDER*

AND NOW, this 7th day of July, 1997, for the reasons described in the accompanying memorandum:

1) Reading Hospital and Medical Center's Motion to Dismiss Counts VIII and X is GRANTED as to Count VIII but DENIED as to Count X, and Motion to Strike Counts VIII and X is DENIED; and

2) Susan Puchini's Motion to Dismiss the Complaint is GRANTED as to Count VII but DENIED as to all other Counts. Count VIII against the Reading Hospital and Count VII against Susan Puchini are DISMISSED with twenty days' leave to amend the Complaint.