**Wilfredo Febus MORALES, Plaintiff,**

v.

**Vincent J. GUARINI, et al., Defendants.**

v.

**Pennsylvania Institutional Health Services, d/b/a/ PrimeCare Medical, and Primecare Medical**

No. CIV. A. 97–5755.

United States District Court, E.D. Pennsylvania.

July 22, 1999.

Wilfredo Febus Morales, Lancaster, PA, pro se.

Kevin C. Allen, Seitzinger, Habib, Allen and Randazzo, Lancaster, PA, for Wilfredo Febus Morales.

William J. Cassidy, Jr., Appel & Yost, Lancaster, PA, Phillip B. Silverman, Harris & Silverman, Philadelphia, PA, for Vincent J. Guarini.

Phillip B. Silverman, Harris & Silverman, Philadelphia, PA, for Lancaster County Prison, Corrections Officer Sutton.

David W. Mersky, Appel and Yost, Lancaster, PA, for Nancy Moyer.

Michael O. Pitt, James P. Kilcoyne and Assoc., Plymouth Meeting, PA, for Louis Neureuter, M.D.

Mary P. Patterson, Marc A. Moyer, Duane, Morris and Heckscher, Harrisburg, PA, for Pennsylvania Institutional Health Services, Inc.

### *MEMORANDUM & ORDER*

KATZ, Senior District Judge.

The third-party defendants move for summary judgment, arguing that there is no basis for the *respondeat superior* liability asserted by third-party plaintiffs. As the court agrees that the third-party plaintiffs have not produced facts from which a reasonable fact finder could conclude that an agency or ostensible agency relationship exists, the third-party defendants' motion will be granted.

*Background*

The original action in this case was brought by Wilfredo Febus Morales, a prisoner, who alleges violations of his civil rights stemming from medical malpractice and denial of medical treatment. Some of the defendants in that action—defendants Vincent Guarini, Lancaster County Prison, Lancaster County, Corrections Officer Sutton, and Nancy Moyer [1]—subsequently filed third party complaints against Pennsylvania Institutional Health Services, Inc., d/b/a PrimeCare Medical, and PrimeCare Medical on a vicarious liability theory.[2]

This theory attempts to hold the third-party defendants responsible for the ac-

---

1. Nancy Moyer was dismissed from the case pursuant to the court's order of May 29, 1999.

2. As do both parties, the court will refer to the third-party defendants as "PrimeCare."

tions of Dr. Neureuter who was, at the time, engaged by PrimeCare to provide medical services at Lancaster County Prison.[3] PrimeCare is an independent contractor of Lancaster County Prison hired to provide physician and medical services. *See* Independent Contractor Agreement, Def. Ex. A. Essentially, PrimeCare appears to be a staffing agency. As permitted by its agreement with Lancaster County, *see id.* ¶ 12, PrimeCare, in turn, entered into an agreement entitled "Independent Contractor Agreement" with Louis Neureuter, the doctor alleged to have mistreated Wilfredo Morales. *See* Def. Ex. B. The question before the court is whether PrimeCare may be held liable for the alleged malpractice of Dr. Neureuter.

*Discussion*[4]

### Independent Contractor Status

The first issue is the status of Dr. Neureuter's relationship with PrimeCare. If he is an independent contractor, PrimeCare would not ordinarily be liable for his actions. If, however, he is a servant or employee, PrimeCare could be liable.

The court understands the third-party plaintiffs to have conceded Dr. Neureuter's status as an independent contractor. However, as their position is not entirely clear, the court finds independently that third-party plaintiffs have not established a genuine issue of material fact with respect to Dr. Neureuter's relationship with PrimeCare. The Third Circuit recently summarized Pennsylvania law distinguishing between employees or servants and independent contractors:

> [T]he characteristic of the former relationship is that the master not only controls the result of the work but has the right to direct the way in which it shall be done, whereas the characteristic of the latter is that the person engaged in the work has the exclusive control over the manner of performing it, being responsible only for the result. Broadly stated ... if the contractor is under the control of the employers, he is a servant; if not under such control, he is an independent contractor[.] The difference between the two relationships turn[s] not so much on the fact of actual interference or exercise of control by the employer ... but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor.

*Jones v. Century Oil U.S.A., Inc.*, 957 F.2d 84, 86 (3d Cir.1992) (citations, internal punctuation omitted); *see also Moon Area School Dist. v. Garzony*, 522 Pa. 178, 560 A.2d 1361, 1362 (1989) (same).

It is clear from the terms of the contract that Dr. Neureuter was not controlled by PrimeCare with respect to how he carried

**3.** In a stipulation approved by the court on May 12, 1999, the parties agreed that the third-party complaint was intended "to state only a state law cause of action against Additional Defendants based on their relationship with Defendant Neureuter as alleged in the Third Party Complaint." Stipulation ¶ 1. It is explicitly stated that no federal causes of action are alleged. *See id.* ¶¶ 2–3.

**4.** Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, if the evidence presented by the parties conflicts, the court must accept as true the allegations of the non-moving party. *See id.* However, Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

out his medical duties. *See Woolfolk v. Duncan,* 872 F.Supp. 1381, 1393 (E.D.Pa. 1995) (looking to contract to determine control); *Moon Area School Dist.,* 560 A.2d at 1368 (analyzing contract and practice to determine degree of control). The contract specifically includes a provision stating, "Matters involving medical judgment are the sole province of the responsible physician; however, security regulations applicable to facility personnel also apply to health care contractors." Agreement, Ex. A ¶ 4 at 9 (Def.Ex. B). This same provision is also included in the contract between Lancaster County and PrimeCare. *See* Agreement, Ex. A ¶ 4 at 10 (Def.Ex. A).

■ The only provisions of the contract that could be viewed as exercising control are those stating that the physician will ensure that placement in outside hospitals is "medically warranted" and that the physician "shall take advantage of cost-effective techniques as ambulatory surgery, scheduled diagnostic work, etc." Agreement, Ex. A ¶ 4 at 7 (Def.Ex. B). This is not a sufficient degree of control to say that Dr. Neureuter was a servant or an employee of PrimeCare. This is in stark contrast to the contract at issue in *Woolfolk,* in which the doctor was limited in his ability to refuse to provide services, to transfer enrollees, and to refer patients. That contract also set specific times when he had to be available for consultation and authorized the principal to inspect his office and services at any time during business hours. *See Woolfolk,* 872 F.Supp. at 1393 (denying summary judgment). No analogous terms are present in Dr. Neureuter's contract with PrimeCare. There is also no evidence that PrimeCare controlled Dr. Neureuter in practice. Dr. Neureuter's own testimony explains clearly that he was an independent contractor rather than an employee of PrimeCare. *See* Def. Ex. D at 11. Throughout his very extensive deposition, Dr. Neureuter never

maintains that PrimeCare controlled or attempted to control his actions. Rather, Dr. Neureuter establishes that he made medical decisions on his own, constrained only by *prison* procedures and policies. This conclusion is buttressed by the uncontroverted affidavit of Richard Smith, the vice-president of PrimeCare Medical operations, who also says that Dr. Neureuter was an independent contractor rather than an employee and that PrimeCare exercised no control over his medical decisions. *See* Aff. ¶ 4–8.

*Ostensible Agency*

■ The third-party plaintiffs argue strenuously that the doctrine of ostensible agency applies to this situation.[5] Ostensible agency permits a plaintiff to hold an institution such as PrimeCare liable for the torts of its independent contractors. In *Capan v. Divine Providence Hospital,* 287 Pa.Super. 364, 430 A.2d 647 (1981), the Pennsylvania Superior Court specifically acknowledged that this doctrine could impose liability on hospitals for the negligent actions of independent contractor physicians. *See id.* at 649–50. Two factors are particularly important in evaluating whether an ostensible agency relationship exists. "First, [where] there is a likelihood that patients will look to the institution rather than the individual physician for care.... Second, where the hospital holds out the physician as its employee[.]" *Boyd v. Albert Einstein Med. Ctr.,* 377 Pa.Super. 609, 547 A.2d 1229, 1232 (1988) (citations, internal punctuation omitted); *see also Davis v. Hoffman,* 972 F.Supp. 308, 312 (E.D.Pa. 1997) (noting same). "The rule normally applies where the plaintiff has submitted himself to the care or protection of an apparent servant in response to an invitation from the defendant to enter into such relations with such servant." *Davis,* 972 F.Supp. at 312, *quoting* Restatement (Sec-

---

**5.** The court agrees with the third-party plaintiffs that this matter is properly before the court and rejects the third-party defendants' argument with respect to improper pleading.

ond) of Agency § 267 cmt. a.[6]

As noted by the *Davis* court, a clear example of such an ostensible agency situation is an emergency room visit in which the patient goes to a particular hospital without any "existing relationship" with the treating physician. *See id.* Similarly, as the *Boyd* court held, in some circumstances, an HMO's relationship with the doctors in its network may establish ostensible agency such that a patient may bring suit against the HMO. *See Boyd,* 547 A.2d at 1234–35; *see also Visconti v. U.S. Health Care,* 857 F.Supp. 1097, 1104 (E.D.Pa.1994) (noting case law supporting HMO liability on ostensible agency theory).[7]

■ In this case, however, there is no support for an allegation of ostensible agency. No evidence shows that Prime-Care held itself out to inmate patients as offering medical care, and no evidence indicates that any inmates reached this conclusion of their own accord. As pointed out by the third-party defendants, Prime-Care's name is not present on the internal prison medical records such that an inmate would have had such a belief. *See* Def. Ex. C (attached to uncontested facts) (medical records); *see also* Aff. of Richard Smith ¶ 7 ("At no time did PrimeCare represent to Wilfredo F. Morales, Vincent J. Guarini, Corrections Officer Sutton, Nancy Moyer, R.N. or any official or representative of Lancaster County or the Lancaster County Prison system that Dr. Neureuter was an employee of Prime-Care."). When questioned in deposition testimony, Mr. Morales, the plaintiff, said that he did not believe he had ever heard of PrimeCare; he made only a vague reference to a letter that he may have received. *See* Def. Ex. C at 51. Thus, no

fact finder could reasonably conclude that Dr. Neureuter was an ostensible agent of PrimeCare such that it ought to be liable for his actions. *See, e.g., Corrigan v. Methodist Hosp.,* 158 F.R.D. 70, 74 (E.D.Pa.1994) (granting motion to dismiss because no facts were pleaded that showed that patient looked to hospital, rather than to individual doctors, for her care or that hospital held them out as such).

The third-party plaintiffs argue that the court should look not to the patient's understanding of the relationship between Dr. Neureuter and PrimeCare but to the prison's understanding of the relationship. As the third-party plaintiffs explain, "Lancaster County Prison did look to Prime-Care rather than Dr. Neureuter to provide the services requested and PrimeCare did 'hold out' Dr. Neureuter as [its] employee." Response to Mot. for Summ. J. at 10. Ignoring for the moment the fact that the language and reasoning of the cases on this issue focus on the patient's understanding, the record evidence before the court directly contradicts third-party plaintiffs' assertion. As noted previously, the contract between PrimeCare and Lancaster County explicitly states that Prime-Care may hire independent contractors. *See* Agreement ¶ 12 at 3 (Def.Ex. A) ("County agrees and understands that Contractor may engage certain medical professionals as independent contractors rather than employees[.]"). Thus, the third-party plaintiffs cannot claim that they were unaware of the possibility of an independent contractor relationship. Moreover, the terms of the agreement state repeatedly that physicians are to exercise completely independent medical judgment. *See, e.g., id.,* Ex. A ¶ 4 at 10 (Def.Ex. A). That is, there is no basis by which the third-party plaintiffs can say

---

**6.** Other courts have relied upon section 429 of the Restatement (Second) of Torts in support of the same principle.

**7.** While the court is not aware of any case law applying this theory to a case such as the one before it now, the court will assume without so holding that the ostensible agency doctrine

might apply in some prison medical-staffing arrangements. The court notes that neither side suggests that application of the doctrine is improper; rather, the third-party defendants argue that there is no genuine issue of material fact.

that they believed that Dr. Neureuter was an employee or a servant of PrimeCare and that they accordingly looked to Prime-Care, rather than Dr. Neureuter, for medical treatment of the inmates in the prison.

Nor do the third-party plaintiffs provide any explanation or argument as to how PrimeCare held Dr. Neureuter out as an employee. The third-party plaintiffs simply assert that there is a material issue of fact with respect to their understanding of Dr. Neureuter's relationship with Prime-Care, but they have provided no evidence that would create such an issue of fact. The only evidence before the court on this matter is the contract, which undercuts this assertion, and the affidavit of Richard Smith, which clearly states that PrimeCare never held out Dr. Neureuter as an employee of PrimeCare. *See* Aff. of Richard Smith ¶ 7.

*Conclusion*

The evidence before the court clearly establishes that Dr. Neureuter was an independent contractor of PrimeCare Medical rather than an employee or a servant. Moreover, no reasonable fact finder could conclude that there was an ostensible agency relationship between PrimeCare and Dr. Neureuter. Consequently, the third-party defendants' motion will be granted.[8]

### ORDER

**AND NOW,** this day of July, 1999, upon consideration of the Motion for Summary Judgment submitted by Third-Party Defendants Pennsylvania Institutional Health Services, d/b/a/ PrimeCare Medical, Inc., and PrimeCare Medical, Inc., and the response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**.

---

8. Although neither party discussed the significance of such clauses in the present context, the court stresses that this disposition of the question of ostensible agency does not affect any contractual provision for indemnification or insurance. *See, e.g.,* Def. Ex. A ¶ 3 at 1–2.